## State Farm Mutual Automobile Insurance Company v. David Roberts, Lyle Webb, Nationwide Mutual Insurance Company & Cooperative Fire Insurance Association of Vermont

[697 A.2d 667]

No. 95-115

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed June 6, 1997

*Robert G. Cain* and *William D. Riley* of *Paul, Frank & Collins, Inc.*, Burlington, for Plaintiff-Appellee.

*James A. Dumont* and *John J. Cotter*, Law Clerk (On the Brief), of *Sessions, Keiner, Dumont & Barnes P.C.*, Middlebury, for Defendant-Appellant/Cross-Appellee Webb.

*John Davis Buckley* of *Theriault & Joslin, P.C.*, Montpelier, for Defendant-Appellee Nationwide Mutual Insurance Company.

*Richard P. Foote* of *Conley & Foote*, Middlebury, for Defendant-Appellee/Cross-Appellant Cooperative Fire Insurance Association of Vermont.

**Dooley, J.** This declaratory judgment action concerns the contractual liability of three insurance companies with respect to an underlying tort suit brought by Lyle Webb after he was injured while unloading an engine from his truck into David Roberts' garage. In response to the parties' motions for summary judgment, the superior court ruled that both Roberts' automobile and homeowner insurers had a duty to defend and indemnify him. The court also ruled that the accident was not covered under Webb's automobile policy, and it dismissed Webb's bad-faith cross-claim against his insurer. Roberts' homeowner's insurer appeals, arguing that a coverage exclusion applies.[1] We agree and reverse.

On the evening of January 21, 1991, Webb drove his uninsured dump truck to Roberts' home to drop off an engine for Roberts' pickup truck. Webb's visit was unexpected; apparently, Webb was repaying Roberts for some snowplowing Roberts had done for Webb. Because Roberts had no immediate use for the engine, he decided to store it in his garage. Webb backed his dump truck to the garage entrance, tilted the bed of the truck to facilitate unloading the engine, and opened the tailgate. In order to slide the engine to the garage floor, the two men placed a piece of plywood at the end of the tailgate to form a ramp. They attempted to slide the engine from the truck bed, down the plywood ramp, and onto the garage floor. Each man kept one foot in the bed of the truck and placed one foot on the plywood board. As they began to push the engine down the ramp, the

---

[1] Webb also appealed, arguing that he was entitled to uninsured-motorist coverage under his automobile policy. Because the underlying suit has been resolved adversely to Webb, this appeal is moot, and we do not consider it.

ramp slipped from its position, causing Webb to fall into the garage wall and onto the floor, where the engine rolled on his hand. Webb sued Roberts, claiming he was injured as the result of Roberts' negligence in directing that the plywood be placed on an icy area of the garage floor.

At the time of the accident, three insurance policies were in force. Roberts had an automobile policy from State Farm Mutual Automobile Insurance Company that contained a provision covering liability for use of a nonowned vehicle. Roberts also had a homeowner's policy from Cooperative Fire Insurance Company of Vermont that excluded coverage for liability resulting "directly or indirectly" from "the ownership, operation, maintenance, use, occupancy, renting, loaning, entrusting, supervision, loading or unloading by an *insured* of *motorized vehicles*." Webb had an automobile policy issued by Nationwide Mutual Insurance Company that covered another truck he owned, but did not cover the dump truck involved in this litigation. That policy contains uninsured-underinsured motorist coverage.

In its summary judgment order, the superior court ruled that (1) State Farm was required to defend and indemnify Roberts under its nonowned-vehicle policy provision; (2) Cooperative Fire was required to defend and indemnify Roberts notwithstanding the automobile exclusion in its homeowner's policy because one of the alleged causes of the accident was an included risk — ice on the garage floor; and (3) Nationwide was not required to extend uninsured-motorist coverage to the claim, and thus did not act in bad faith in denying coverage, because it did not insure Webb's dump truck, and Roberts was an insured motorist. Only Webb and Cooperative Fire appealed from the order.

Following the declaratory judgment ruling, Webb's tort suit went to trial and resulted in a defendant's verdict, which was affirmed on appeal to this Court. The resolution of the underlying suit has mooted the dispute over whether Nationwide was required to extend uninsured-motorist coverage to Webb's claim. It has also mooted any dispute over Cooperative Fire's obligation to indemnify Roberts. There remains, however, a live dispute over the cost of the defense of the underlying suit between State Farm and Cooperative Fire. We must, therefore, decide Cooperative Fire's appeal of the superior court's decision that Cooperative Fire had an obligation to defend Roberts.

■ The issue turns on whether the doctrine of concurrent causation applies in light of the language of the policy and the facts

surrounding the accident. Under that doctrine, if the liability of an insured arises from concurrent but separate nonvehicle-related and vehicle-related negligent acts, and the nonvehicle-related act is an included risk under the insured's homeowner's policy, coverage exists even though the policy contains an automobile exclusion. 7A J. Appleman, Insurance Law and Practice § 4500, at 179-80 (1979). In other words, if an occurrence is caused by a risk included within the policy, coverage may not be denied merely because a separate excluded risk was an additional cause of the accident. *Id.* at 179.

The leading case on the concurrent causation doctrine is *State Farm Mutual Automobile Insurance Co. v. Partridge*, 514 P.2d 123 (Cal. 1973). In that case, after filing the trigger of a pistol to create a "hair trigger action," the insured and a friend headed with the pistol into rough terrain hunting jackrabbits in their four-wheel-drive vehicle. When the vehicle hit a bump, the pistol discharged and injured the friend, who sued the insured. The homeowner's policy insurer denied coverage, relying on a policy provision that excluded coverage for bodily injury "arising out of" the use of any motor vehicle. The California Supreme Court held that the claim of the friend was covered because both vehicle-related and nonvehicle-related risks proximately caused the injury and the insured's liability. *Id.* at 132. According to the court:

> Here, . . . an insured risk (the modification of the gun) combined with an excluded risk (the negligent use of the car) to produce the ultimate injury. Although there may be some question whether either of the two causes in the instant case can be properly characterized as *the* "prime," "moving" or "efficient" cause of the accident we believe that coverage under a liability insurance policy is equally available to an insured whenever an insured risk constitutes simply *a* concurrent proximate cause of the injuries.

*Id.* at 130 (footnotes omitted).

In applying this holding to a variety of fact patterns in later cases, the California appellate courts have focused on whether the act that gave rise to the alleged liability under the homeowner's policy was independent of the act that constituted use of the vehicle. See, e.g., *Daggs v. Foremost Ins. Co.*, 196 Cal. Rptr. 193, 196 (Ct. App. 1983) (no coverage under premises liability policy because conduct of insureds in failing to design safe motorcross race course was dependent upon use of motor vehicles); *Safeco Ins. Co. v. Gilstrap*, 190 Cal. Rptr. 425,

427 (Ct. App. 1983) (no liability under homeowner's policy because conduct of insureds in negligently entrusting vehicle to their son, who was in accident with another vehicle, was dependent upon and related to use of motor vehicle); *Allstate Ins. Co. v. Jones*, 188 Cal. Rptr. 557, 561 (Ct. App. 1983) (no liability under homeowner's policy for improperly loading rebar on truck, where truck collided with car and rebar flew out and hit driver of car, because negligent conduct depended upon truck's movement to become hazardous).

Although Cooperative Fire argues that we should not adopt the concurrent-causation doctrine, at least not in light of the wording of its policy, it urges alternatively that we embrace a restatement of the elements of the doctrine in *Garvey v. State Farm Fire & Casualty Co.*, 227 Cal. Rptr. 209 (Ct. App. 1986). Under the court's analysis in that case, when included nonvehicle-related and excluded vehicle-related acts concur to cause an accident, coverage exists under the homeowner's policy notwithstanding the automobile exclusion if either (1) the same loss could have occurred even absent the vehicle-related cause; or (2) the same loss could not have occurred absent the vehicle-related cause, but the nonvehicle-related cause set in motion the vehicle-related cause. *Id.* at 219 n.10. The court, which reversed a directed verdict for the insureds in this first-party property loss case,[2] acknowledged that its analysis did not resolve all potential coverage scenarios, such as when two dependent causes simultaneously contribute to a loss but neither cause sets the other in motion. *Id.*

The California Supreme Court affirmed *Garvey*, but did not explicitly adopt the district court's analysis, because it refused to extend *Partridge* to first-party property-loss cases, stating that *Partridge* "should be utilized only in *liability* cases in which true concurrent causes, each originating from an independent act of negligence, simultaneously join together to produce injury." *Garvey v. State Farm Fire & Casualty Co.*, 770 P.2d 704, 705 (Cal. 1989).

Courts in several other jurisdictions have adopted the concurrent-causation doctrine set forth in *Partridge*, although there has been no consensus on the legal test for determining when included and excluded causes are sufficiently independent to invoke the doctrine. For the most part, determination of whether coverage exists has been

---

[2] If the insured is seeking coverage against loss or damage sustained by the insured, the claim is first party in nature; on the other hand, if the insured is seeking coverage against liability of the insured to another, the claim is third party in nature. *Garvey v. State Farm Fire & Casualty Co.*, 770 P.2d 704, 705 n.2 (Cal. 1989).

heavily dependent on the particular facts of each case. See, e.g., *Waseca Mut. Ins. Co. v. Noska*, 331 N.W.2d 917, 923 (Minn. 1983) (coverage existed under homeowner's policy, notwithstanding automobile exclusion, because nonvehicle-related act of placing live embers in uncovered barrel, before placing barrel in insured's truck, concurred with driving of truck to cause fire); *Allstate Ins. Co. v. Watts*, 811 S.W.2d 883, 888 (Tenn. 1991) (concurrent-causation doctrine applies if loss resulted "in substantial part" from included risk, even if excluded risk was originating cause; coverage existed where injury resulted from insured dropping and kicking pan of flaming liquid during repair of vehicle in insured's garage); *Lawver v. Boling*, 238 N.W.2d 514, 521-22 (Wis. 1976) (where insured's son-in-law was injured during collapse of rigged lift chair that was raised and lowered by moving pickup truck, homeowner's policy would cover accident notwithstanding automobile exclusion if injuries resulted, "even in part," from included risk); cf. *Salem Group v. Oliver*, 607 A.2d 138, 140 (N.J. 1992) (because act of serving alcohol to minor does not depend on insured's ownership of motor vehicle, homeowner's insurer had *duty to defend* insured against claim alleging social host liability).

Some courts, however, have refused to apply the concurrent-causation doctrine so as to nullify an unambiguous automobile exclusion that denies coverage for occurrences arising out of the use of a motor vehicle. See *Northern Assurance Co. of America v. EDP Floors, Inc.*, 533 A.2d 682, 689-90 (Md. 1987) (no coverage under general business liability policy for claim of negligent supervision of drunken employee whose operation of hydraulic lift on truck caused injury; policy's automobile exclusion, which unambiguously denied coverage for injuries "arising out of" use of motor vehicle, did not require that use of truck be sole cause of injury); *Vanguard Ins. Co. v. Clarke*, 475 N.W.2d 48, 53 (Mich. 1991) (no compelling legal or policy reason for applying concurrent-causation doctrine to nullify unambiguous automobile exclusion in homeowner's policy; given potential for double recovery under homeowner's and automobile policies, insured could not have reasonably contemplated coverage under exclusion for injuries resulting from his closing garage door before falling asleep in car with engine running); *Krempl v. Unigard Sec. Ins. Co.*, 850 P.2d 533, 535 (Wash. Ct. App. 1993) (concurrent-causation doctrine does not apply when exclusion unambiguously denies coverage for injuries "arising out of" use of automobile; accordingly, no coverage exists where injuries resulted from attempt to remove jury-rigged fuel pump from automobile).

On at least two occasions, we have addressed the effect of multiple causes of an accident on insurance coverage for damages arising out of that accident. In *Town of South Burlington v. American Fidelity Co.*, 125 Vt. 348, 215 A.2d 508 (1965), the Town sought coverage from its insurer after being sued for damages resulting from injuries incurred when a leaking culvert pipe created a hole in a street. The insurer denied coverage based on a policy provision excluding "coverage for liability arising from the existence of streets and sidewalks." *Id.* at 349, 215 A.2d at 510. Noting that persons had a statutory right to recover damages from injuries caused by defective culverts but not streets or sidewalks, this Court had "no difficulty" in finding that the insurer had a duty to defend because the complaint alleged that the accident and injury originated in the defective culvert. *Id.* at 350-51, 215 A.2d at 511. According to the Court, "the mere fact that the leaking culvert brought about the hole in Spear Street does not displace the causation from the culvert to the street and bring the street and sidewalk exclusion into operation." *Id.* at 351, 215 A.2d at 511.

Similarly, in *Valente v. Commercial Insurance Co.*, 126 Vt. 455, 236 A.2d 241 (1967), the insured died from a combination of a fall from a loading platform and arteriosclerosis. The insurer refused to pay a death benefit under an accident insurance policy because the policy required that the loss result "directly and independently of all other causes, from accidental Bodily injury." *Id.* at 458, 236 A.2d at 243. We held that the policy language meant that the accidental injury must be a "proximate and predominant producing cause" of death, but need not be the exclusive cause. *Id.* at 462, 236 A.2d at 245. We affirmed a jury finding that the insured died of accidental bodily injury. *Id.* at 463, 236 A.2d at 246.

Although neither *Valente* nor *South Burlington* explicitly adopted the concurrent-causation doctrine, the opinions are consistent with use of that doctrine. We conclude that the concurrent-causation doctrine is a logical extension of our precedents and adopt it for determining whether liability coverage is excluded by a use exclusion of the type involved here.

Cooperative Fire argues that despite our adoption of the concurrent-causation doctrine, it should not apply in this case because (1) its automobile exclusion unambiguously and broadly denied coverage for injuries "directly or indirectly" associated with motor vehicles, and thus the court's application of the doctrine effectively rewrote the insurance contract between it and Roberts; (2) the exclusion is

consistent with the reasonable expectations of the parties to the contract; and (3) the ice was not an independent cause of the injuries because the same loss could not have occurred absent the excluded risk and the included risk did not set in motion the excluded risk. We take these arguments in turn.

As Cooperative Fire points out, courts adopting the concurrent-causation doctrine have construed automobile exclusions containing the phrase "arising out of" rather than the instant phrase "results directly or indirectly from." We see no significant difference in the meaning of the phrases, however. Indeed, the courts have acknowledged the breadth and lack of ambiguity in the "arising out of" exclusion language. See *Lawver*, 238 N.W.2d at 518 (phrase "arising out of" is very broad and comprehensive, requiring only that there be some causal relationship between injury and risk for which coverage is provided). Nevertheless, they have applied the concurrent-causation doctrine not on the basis that the exclusion language is narrow or ambiguous, but rather on the basis that coverage for a loss resulting from an included risk may not be denied merely because an excluded risk was an additional cause of the loss. See *Partridge*, 514 P.2d at 129 (even assuming automobile exclusion is not ambiguous, coverage exists under homeowner's policy as long as included risk was concurrent proximate cause of accident); *Lawver*, 238 N.W.2d at 521 (*Partridge* did not base its decision on existence of exclusion's ambiguity, but rather found that included and excluded risks concurred in causing injury).[3] In essence, we accepted the same argument in *Valente*. We agree with these courts that application of the concurrent-causation doctrine does not depend on ambiguity in the language of the automobile exclusion.

█ In so holding, we do not depart from our oft-stated principle that insurance contracts "must be interpreted according to their terms and the evident intent of the parties, as gathered from the contract language." *Cooperative Fire Ins. Ass'n v. Gray*, 157 Vt. 380, 383, 599 A.2d 360, 362 (1991). Rather, we emphasize that this principle

---

[3] Cooperative Fire misstates the comments of the court in *Lawver v. Boling*, 238 N.W.2d 514, 521 (Wis. 1976), regarding the phrase "directly or indirectly." According to Cooperative Fire, the court in *Lawver* "expressly indicated" that it would have upheld the automobile exclusion at issue had the exclusion contained the words "directly or indirectly." To the contrary, the court stated that it had recently given a broad construction to the phrase "arising out of," and that it had rejected the argument that the phrase was ambiguous for failing to make clear that the exclusion applied regardless of whether the injuries were caused by conduct directly or indirectly related to the use of a motor vehicle. *Id.*

is designed to avoid binding insurers to coverage that the parties did not reasonably contemplate. See *City of Burlington v. National Union Fire Ins. Co.*, 163 Vt. 124, 130, 655 A.2d 719, 722 (1994) (Court will not adopt construction of policy that "would distort the purpose of the liability insurance policy" by imposing on insurer risk of contractual loss); *State v. Glens Falls Ins. Co.*, 132 Vt. 97, 99, 315 A.2d 257, 258 (1974) (where interpretation urged would encompass risk neither contemplated by type of policy nor intended to be undertaken by carrier, carrier is entitled to fair construction that reflects understanding of parties). In short, our focus is on the agreement contemplated by the parties.

■ The reasonable expectations of the parties are important in considering the scope of coverage provided in insurance contracts because such contracts, largely adhesive in nature, often contain boilerplate terms that are not bargained for, not read, and not understood by the insureds. *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 682 P.2d 388, 395 (Ariz. 1984); see R. Keeton & A. Widiss, Insurance Law: A Guide to Fundamental Principles, Legal Doctrines, and Commercial Practices § 5.5, at 559, 563 (1988) (courts are increasingly resolving issues of causation involving insurance policy terms by considering scope of coverage in terms of protecting insured's reasonable expectations); Appleman, *supra*, § 4500, at 179-80 (concurrent coverage exists where coverage of risk that exists independently of use of motor vehicle is reasonably contemplated by parties). Therefore, in determining the reasonable expectations of the parties to an insurance contract, we must consider the policy in its entirety with an eye toward its general purpose. See *Darner Motor Sales*, 682 P.2d at 398 (under reasonable-expectation rule, no effect is given to boilerplate terms that are contrary to purpose of transaction as known to contracting parties); *Salem Group v. Oliver*, 590 A.2d 1194, 1197 (N.J. Super. Ct. App. Div. 1991) (when construing insurance policies, courts must search for reasonable expectations of parties in keeping with express general purposes of policy).

■ The purpose of Cooperative Fire's policy "was to insure other liabilities outside the area of motor vehicles." *Medlar v. Aetna Ins. Co.*, 127 Vt. 337, 343, 248 A.2d 740, 745 (1968). Its interpretation of the phrase "results directly or indirectly from," however, "would unjustifiably outrun the risk intended to be insured against." *Glens Falls*, 132 Vt. at 101, 315 A.2d at 259. For instance, were we to accept Cooperative Fire's position, coverage could be denied if Roberts

himself slipped on ice while unloading the truck, or even if he slipped and fell on the basement stairs while carrying objects unloaded from the truck. See *Watts*, 811 S.W.2d at 887 (adopting insurer's interpretation of phrase "arising out of" to include any causal relationship would exclude coverage, for example, if injured party had fallen down flight of stairs while retrieving tool from insured's house to aid in repairing vehicle); cf. *Aetna Casualty & Sur. Co. v. State Farm Mut. Auto. Ins. Co.*, 380 A.2d 1385, 1388 (D.C. 1977) (coverage existed under homeowner's policy notwithstanding automobile exclusion where injured party slipped on basement stairs while carrying materials unloaded from car). We do not think the parties reasonably contemplated such a result when Roberts purchased his general liability homeowner's policy.

Finally, we must determine whether the superior court correctly applied the doctrine of concurrent causation to this case to find that Cooperative Fire had a duty to defend. As stated above, Cooperative Fire's main argument on this point is that the concurrent causes should be independent of each other, as set out in the court of appeals' decision in *Garvey*, and that requirement is not met. In addressing this question, we first emphasize that this is not truly a concurrent-causation case. Webb has not alleged that Roberts was negligent in any respect other than directing the placement of the plywood ramp on the ice-covered floor. The concurring cause, if it can be described as such, was the unloading of the engine from the truck bed and down the ramp. There is no allegation that any negligence was involved in the unloading operation, apart from the placement of the ramp.

These facts are comparable to those in *Daggs v. Foremost Insurance Co.*, where the tort plaintiff was injured, while participating in a motorcycle race, when he ran into the chain-link barrier fence surrounding the race course. The course-owners' liability carrier denied coverage under a policy exclusion for injuries arising out of the use of mobile equipment while being used in organized racing. The insured alleged that the negligent design of the fence was a concurrent cause under *Partridge*. The court disagreed, stating:

> The only reasonable interpretation of the allegations of plaintiff's underlying complaint is that [insured] failed to make the motorcycle course safe for the organized racing event in which plaintiff was participating. There is but one negligent act of the insured, not two as in *Partridge*, and this cause of the injuries is not independent of the policy exclusion.

196 Cal. Rptr. at 196.

■ Webb's real complaint against Roberts was that Roberts made the act of unloading the engine unsafe by placing the plywood ramp on the ice. It is the unloading of the truck that is explicitly excluded from the policy coverage. We are unable to separate the alleged act of negligence from the policy exclusion. We agree with the California courts that the negligence on which coverage is premised must somehow be independent of the conduct excluded from the policy. Accordingly, we hold that concurrent causation does not apply, and the superior court erred in finding coverage under Cooperative Fire's policy.

*Reversed.*