### Joseph Mailhiot & Detra Coltey v. Nationwide Mutual Fire Insurance Company

[740 A.2d 360]

No. 98-357

Present: Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.

Opinion Filed August 27, 1999

*William H. Meub* and *Michael E. Zeliger* of *Keyser, Crowley, Carroll, George & Meub, P.C.*, Rutland, for Plaintiffs-Appellants.

*Michael J. Gannon* and *Joshua L. Simonds* of *Affolter Gannon & Flynn, Ltd.*, Burlington, for Defendant-Appellee.

**Johnson, J.** This case raises the issue of whether, when indemnification is sought from an insurance company, the fact that a plaintiff has claimed two distinct theories of recovery is sufficient to invoke the concurrent causation doctrine adopted in *State Farm Mutual Automobile Insurance Co. v. Roberts*, 166 Vt. 452, 697 A.2d 667 (1997), thus allowing for recovery under a policy despite the fact that one of the causes of the accident was an excluded risk. We conclude that the pleading of distinct theories of recovery does not establish concurrent causation, and therefore affirm.

Plaintiffs Joseph Mailhiot, Detra Coltey, and their son William Mailhiot appeal a ruling of the superior court granting summary judgment to defendant Nationwide Mutual Fire Insurance Company (Nationwide) on the issue of whether William Mailhiot's injuries were covered by a Nationwide policy. The relevant alleged facts are not disputed. On July 10, 1994, William Mailhiot ("Billy") visited Donald and Patricia Wyman's home to play with their son Eric. Both Billy and Eric were thirteen years old at the time. Eric drove off the Wymans' property in an all terrain vehicle (ATV) belonging to the family, carrying Billy as a passenger. Eric lost control of the ATV and crashed, causing severe injuries to Billy.

Plaintiffs sued the Wymans, who settled with plaintiffs by assigning to plaintiffs their rights under a Nationwide homeowners policy in exchange for a release from liability. Plaintiffs then sued Nationwide for failure to defend and cover the Wymans. The parties filed cross-motions for summary judgment, and the trial court ruled in favor of defendant. The trial court concluded that Billy's injuries were not covered by the policy because the policy contained an automobile exclusion providing that:

> [The policy's coverage for medical payments to others]
> do[es] not apply to bodily injury or property damage arising

out of the ownership, maintenance, or use of . . . a motor vehicle owned or operated by, or rented or loaned to an insured.

On appeal, plaintiffs contest no issue of fact, but contend that the trial court erred as a matter of law in ruling that plaintiffs' cause of action for negligent supervision was not independent of a cause of action for negligent operation, maintenance, entrustment or use of a motor vehicle.

Because there are no disputed issues of fact, we review only whether the trial court was correct in deciding that Nationwide was entitled to judgment as a matter of law. See *Mello v. Cohen*, 168 Vt. 639, 641, 724 A.2d 471, 473 (1998). Plaintiffs argue that Billy's injuries were the result of two distinct causes: Eric Wyman's negligence in operating the motor vehicle (a risk that plaintiffs acknowledge is clearly excluded under the policy) and his parents' negligence in failing to adequately supervise the two children while they played. Plaintiffs assert that the latter theory of liability does not fall within the motor vehicle exclusion of the policy, and therefore Billy's injuries should be covered. The two causes of the accident are independent, plaintiffs contend, because Billy could have just as easily fallen out of a tree or otherwise injured himself as a result of the Wymans' negligent supervision. Plaintiffs emphasize that negligent supervision is a distinct cause of action and that Nationwide could have excluded claims for negligent supervision from coverage if it had so chosen.

We adopted the concurrent causation doctrine that plaintiffs argue applies to this case in *State Farm Mutual Automobile Insurance Co. v. Roberts*, 166 Vt. 452, 697 A.2d 667 (1997). In that case, the insured, Lyle Webb, drove to his friend David Roberts' house to give Roberts an engine. See *id.* at 454, 697 A.2d at 668. Webb and Roberts used a piece of plywood as a ramp to facilitate the unloading of the engine; the ramp slipped, causing the engine to roll onto Roberts' hand and injure him. See *id.* Roberts alleged that it was Webb's negligence in placing the ramp on an icy spot on the floor that caused his injury. See *id.* at 455, 697 A.2d at 669. The issue on appeal was whether an insurance policy's automobile exclusion precluded coverage, a determination that depended on whether the acts of nonvehicle-related and vehicle-related negligence were concurrent causes of the injury. See *id.* at 455-56, 697 A.2d at 669. We explained the concurrent causation doctrine as follows:

Under that doctrine, if the liability of an insured arises from concurrent but separate nonvehicle-related and vehicle-

related negligent acts, and the nonvehicle-related act is an included risk under the insured's homeowner's policy, coverage exists even though the policy contains an automobile exclusion. In other words, if an occurrence is caused by a risk included within the policy, coverage may not be denied merely because a separate excluded risk was an additional cause of the accident.

*Id.* at 456, 697 A.2d at 669 (citation omitted).

Though we adopted the concurrent causation doctrine in the *Roberts* opinion, we ultimately concluded that the doctrine did not apply to the facts of that case because the alleged act of negligence (placing the ramp on an icy spot on the floor) was inseparable from the excluded act (unloading a motor vehicle). In so concluding, we contrasted *Roberts* with the leading case on concurrent causation, *State Farm Mutual Automobile Insurance Co. v. Partridge*, 514 P.2d 123 (Cal. 1973), in which an insured modified a pistol to create a hair trigger, which then discharged and injured his friend when the insured drove over a bump. See *Roberts*, 166 Vt. at 456, 697 A.2d at 669. The difference between the two cases is that, in *Roberts*, the alleged negligent act was entirely dependent upon the excluded act, while in *Partridge*, the relationship between the two was entirely circumstantial. In other words, the hazard created by the modified pistol in *Partridge* existed independently of the hazard involved in operating the motor vehicle. In *Roberts*, by contrast, the hazard associated with the negligent placement of the ramp would never have existed absent the task of unloading the vehicle.

In *Roberts* we cited a New Jersey case that also illustrates those circumstances in which two causes of an accident are truly independent of one another. In *Salem Group v. Oliver*, 607 A.2d 138 (N.J. 1992), the insured allegedly served alcohol to a nephew who was then involved in an accident on an ATV while off the insured's property. The question in that case was "whether the insurer can avoid th[e] obligation [to defend an insured] because a separate excluded risk, the operation of an all-terrain vehicle (ATV), constitute[d] an additional cause of the injury." *Id.* at 139. The court applied the concurrent causation doctrine and concluded that the negligent act of serving alcohol to a minor was distinct and therefore covered by the policy. The court reasoned that the cause was distinct because the insured would have been liable for serving alcohol even if the nephew had borrowed another's vehicle. The court distinguished the case from

others involving negligent entrustment of a vehicle to an insured's son and negligent supervision of an employee:

> [The other opinions dealing with negligent supervision and negligent entrustment] proceed on the assumption that the negligent entrustment or supervision of a motor vehicle is intertwined with the ownership and operation of the motor vehicle. The negligent entrustment or supervision cannot be isolated from the ownership and operation of the insured automobile. In contrast, the serving of alcohol to a minor does not depend on the insured's ownership of a motor vehicle or its entrustment to another.

*Id.* at 139-40. Stated another way, there was a manifest hazard created by serving alcohol to a minor that would have existed even in the absence of the use of insured's vehicle. The separateness of the two causes is also apparent because there were distinct objects of the alleged acts of negligence: alcohol on the one hand, and the motor vehicle on the other. Therefore it was a concurrent cause.

In the instant case, by contrast, there is no way to separate the Wymans' alleged negligence in supervising Eric and Billy from the vehicle-related conduct because the ATV was the only possible object of their negligence. Plaintiffs attempt to argue that the Wymans are separately liable for negligent supervision because their negligence *could have* manifested itself with any number of instrumentalities: a fall from a tree or an accident with a power tool, for example. An insured cannot be liable, however, for negligence in the abstract. Rather, an insured is liable for negligence with respect to a particular object or instrumentality. In *Oliver*, the distinct nonvehicle instrumentality was alcohol. The only alleged negligent act in the instant case, by contrast, was allowing the two boys to depart *on the vehicle*. There was no manifest (as opposed to abstract) hazard involved in the Wymans' relaxed supervision of their son and his friend absent the hazard posed by operation of the ATV itself. It is impossible to separate the excluded conduct from any included conduct; therefore, the two causes are not independent of one another and cannot be said to be concurrent.

Plaintiffs contend that the motor vehicle in this case was "simply the medium by which the insured's negligent supervision manifested harm." However, this is precisely what the motor vehicle exclusion is meant to address: the motor vehicle as medium. See *Oliver*, 607 A.2d at 142 (Clifford, J., dissenting) (in insurance cases, concern is not with

question of culpability or why injury occurred, but only with nature of injury and how it happened). This is in contrast to cases like *Partridge*, for instance, where the motor vehicle was merely the incidental locale of nonvehicle negligence, rather than the medium of negligence.

Our holding in this case comports with the rule adopted by the majority of states that have examined this issue. See *Taylor v. American Fire & Cas. Co.*, 925 P.2d 1279, 1282-83 (Utah Ct. App. 1996) (explaining minority and majority positions). Under this rule, a court must look to the causes of the injury and their relationship to one another rather than the theory of recovery forwarded by a plaintiff. See *id.* at 1283-84. This approach is both logical and just, because the coverage provided by an insurance policy is generally defined by risks and/or causes of injuries, not theories of recovery. See *id.* at 1283; *American Universal Ins. Co. v. Cummings*, 475 A.2d 1136, 1137-38 (Me. 1984); *Northern Assurance Co. v. EDP Floors, Inc.*, 533 A.2d 682, 689 (Md. 1987).

Appellants urge us to join the minority of states that find coverage for vehicle-related conduct if the claim is construed as one for negligent supervision. See, e.g., *Tuell v. State Farm Fire & Cas. Co.*, 477 N.E.2d 70 (Ill. App. Ct. 1985); *United States Fidelity & Guar. Co. v. State Farm Mut. Auto. Ins. Co.*, 437 N.E.2d 663 (Ill. App. Ct. 1982); *Grinnell Mutual Reinsurance Co. v. Employers Mut. Cas. Co.*, 494 N.W.2d 690 (Iowa 1993). The rationale in these cases seems to be that coverage is not precluded so long as the plaintiff pleads a distinct cause of action or theory of recovery.[1] See, e.g., *Tuell*, 477 N.E.2d at 74. This rule would be inconsistent with the precedent established in *Roberts*, which looked to the relevant instrumentality and the relationship between the alleged causes rather than the theory of recovery to determine whether the causes were concurrent.

We believe the majority rule is also preferable because it gives effect to the intentions of the parties and the plain language of the policy, which we are obligated to do in interpreting a policy. *Garneau v. Curtis & Bedell, Inc.*, 158 Vt. 363, 367, 610 A.2d 132, 134 (1992) (insurance policy is contract that must be interpreted according to its terms and the parties' evident intent as gathered from language used); *Sanders v. St. Paul Mercury Ins. Co.*, 148 Vt. 496, 507, 536 A.2d

---

[1] In *Grinnell*, the Iowa case, the court provided no real analysis of why the negligent supervision in that case was found to be an independent proximate cause; rather, the court merely stated this as its conclusion.

914, 921 (1987) (in absence of ambiguity in agreement, statutory violation, or inherently unfair or misleading language, we give effect to plain meaning of policy). The minority rule allows the naming of a distinct theory of recovery to create coverage for a risk that would otherwise be excluded, thus effectively modifying the language the parties agreed upon after the fact.

The hazard created by the Wymans' negligent supervision of their son and his friend would not have existed absent the hazard posed by the ATV. Because the alleged act of negligence (negligent supervision of the two boys in allowing them to depart on the ATV) is inseparable from the excluded conduct (operation of the ATV), the concurrent causation doctrine does not apply to this case. Therefore, the accident fell within the automobile exclusion, and the trial court ruled correctly in finding there was no coverage under the policy.[2]

*Affirmed.*

---

[2]Because the policy defines a motor vehicle to include recreational vehicles while off an insured location, there was some discussion at oral argument about the possibility that the ATV was not a motor vehicle under the policy definition when the Wymans allowed Billy and Eric to depart, because that decision was made while the boys and the vehicle were still on an insured location. Because this argument was raised for the first time at oral argument, however, we do not consider it on appeal.