Co-operative Ins. Cos. v. Woodward, No. 168-8-10 Oecv (Eaton, J., Apr. 11, 2011)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

SUPERIOR COURT
Orange County

CIVIL DIVISION
Docket No. 168-8-10 Oecv

Co-operative Insurance Companies
     Plaintiff

v.

Denise Woodward
James Bennett, Individually
and as Administrator of the Estate of Brooke Bennett
     Defendant

### Decision on Cross-Motions for Summary Judgment

At issue in this case is whether plaintiff Co-operative Insurance Companies must defend and indemnify a homeowner who allegedly negligently failed to prevent her spouse from intentionally kidnapping, sexually assaulting, and murdering their twelve-year-old niece. Because the plain language of the insurance policy (1) does not cover bodily injury that arises out of the sexual molestation of a person, (2) does not cover intentional criminal acts that are not "occurrences," and (3) unambiguously excludes coverage for any acts that are expected or intended by "an insured," *Allstate Ins. Co. v. Vose*, 2004 VT 121, ¶¶ 21–23, 177 Vt. 412; *Northern Security Ins. Co. v. Perron*, 172 Vt. 204, 220–22 (2001), plaintiff-insurer is entitled to a declaration that it owes no duties of defense or indemnification in the underlying lawsuit.

As a threshold matter, this is a declaratory-judgment action brought by the insurer against the insured and the tort-plaintiffs in the underlying lawsuit. See *Cooperative Fire Ins. Ass'n v. Bizon*, 166 Vt. 326, 330–32 (1997) (explaining that insurers may join tort-plaintiffs as parties in declaratory-judgment actions in order to resolve the question of insurance coverage as expeditiously as possible; this procedure is desirable because "from a pragmatic viewpoint . . . the most real dispute is between the injured third party and the insurance company, not between the injured and an oftentimes impecunious insured") (quotation omitted). Here, the insured, Denise Woodward, has not argued that there should be insurance coverage. Instead, it is the underlying tort-plaintiffs, James Bennett and the Estate of Brooke Bennett,[1] who contend that there ought to be coverage.

---

[1] It is not necessary to address here whether Mr. Bennett's individual claims are sustainable given the terms of the Vermont's wrongful-death statute and the absence of any common-law claim for wrongful death, because the answer to that question has no bearing on the determination of the coverage issues before the court. For ease of reference, the court will simply refer to both Mr. Bennett and the Estate of Brooke Bennett as the "defendants" for purposes of this opinion.

Although the parties have offered different statements of material facts in support of their cross-motions for summary judgment, the questions of whether an insurer owes duties of defense or indemnification are normally resolved by comparing the allegations of the underlying tort complaint to the terms of coverage in the homeowner's policy. *Concord Gen. Mut. Ins. Co. v. Madore*, 2005 VT 70, ¶¶ 7–9, 178 Vt. 281. For that reason, the following statement of undisputed facts is taken from the underlying complaint.

On June 25, 2008, Michael Jacques allegedly kidnapped his twelve-year-old niece, Brooke Bennett, and brought her to his home in Randolph, Vermont. He allegedly did this "with the intention to commit violent and devious harm, personal injury, and criminal acts to said minor child." He then "drugged, sexually assaulted, and murdered her."

At the time, Michael Jacques was married to Denise Woodward; they lived together in the Randolph home. Denise Woodward was not involved in the kidnapping or the subsequent events, but according to the complaint, she knew or should have known that her husband had a history of predatory behavior towards minor children and women, and further knew or should have known that her husband posed a direct threat to their twelve-year-old niece. Based on this knowledge, it is alleged that Denise Woodward negligently failed to (1) supervise minor children while they were in the home, (2) warn the Bennett family of the dangers posed by her husband, and (3) prevent the harm from occurring. No claims against Michael Jacques are stated in the underlying complaint.

Michael Jacques and Denise Woodward were the named insureds on a policy of homeowners' insurance issued by Co-operative Insurance Companies with a policy period of August 2007 to August 2008. The policy contains the following liability coverage provision:

> **Coverage L—Personal Liability**. "We" pay, up to "our" "limit", all sums for which an "insured" is liable by law because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies. "We" will defend a suit seeking damages if the suit resulted from "bodily injury" or "property damage" not excluded under this coverage.

The term "bodily injury" is defined as follows in the Vermont endorsement:

> "Bodily injury" means bodily harm to a person and includes sickness, disease, or death. This also includes required care and loss of services.

> "Bodily injury" does not mean bodily harm, sickness, disease, or death that arises out of: . . . (c) sexual molestation of any person.

2

The term "occurrence" is then defined as follows:

> "Occurrence" means an accident, including repeated exposures to similar conditions, that results in "bodily injury" or "property damage" during the policy period.

Aside from these coverage provisions and definitions, there is an "intentional-acts" exclusion that applies to personal liability coverage:

> **1. Exclusions that Apply to Coverages L and M—**This policy does not apply to: . . .
>
> > i. "bodily injury" or "property damage":
> >
> > > (1) which is expected by, directed by, or intended by an "insured";
> > >
> > > (2) that is the result of a criminal act of an "insured"; or
> > >
> > > (3) that is the result of an intentional or malicious act by or at the direction of an "insured".

Finally, returning to the definitions section at the beginning of the policy, there is the following definition of the term "insured":

> 7. "Insured" means:
>
> > a. "you";
> >
> > b. "your" relatives if residents of "your" household;
> >
> > c. persons under the age of 21 residing in "your" household and in "your" care or in the care of "your" resident relatives; . . . .
> >
> > Under Coverages L and M, "insured" also includes [persons using watercraft, or performing domestic duties relating to the premises, or persons acting as real estate managers].
> >
> > Each of the above is a separate "insured", but this does not increase "our" limit.

It is plain from these definitions that the alleged kidnapping, sexual assault, and murder is not covered by the homeowners' insurance policy for at least three reasons: (1) it was not an "occurrence" or an "accident" but rather an intentional act committed by an insured; (2) it was not "bodily injury" because the harm arose, in part, out of the "sexual molestation of a person"; and (3) the harm was excluded from coverage because it was the result of an intentional criminal act of "an insured." No plausible interpretation of the policy could possibly cover this alleged act. See *TBH v. Meyer*, 168 Vt. 149, 154 (1988) (explaining that "[t]he average person purchasing homeowner's insurance would cringe at the very suggestion that the person was paying for 'criminal sexual abuse of children' coverage [or 'murder' coverage]; and certainly the person would not want to share that type of risk with other homeowner's policyholders").

The question presented in this case is whether the insurance policy nevertheless provides coverage for a spouse who negligently failed to prevent the intentional harm from occurring. At the heart of the case is whether the relevant act for determining coverage is the intentional kidnapping, sexual assault, and murder, or rather the negligent failure to prevent that event from occurring. An important related question is whether the separate-insureds clause (also known as the severability clause) creates an ambiguity when read together with the intentional acts exclusion, and whether the ambiguity must be resolved in favor of coverage.

As a starting point, the general rule is that insurance coverage is determined by the nature of the underlying injury rather than by the theories of liability asserted in the complaint. In other words, an allegation of negligence generally does not trigger insurance coverage if the conduct giving rise to the injury was intentional. See *Meyer*, 168 Vt. at 153 (no coverage for negligent infliction of emotional distress where the insured intentionally exploited children); see also *Bizon*, 166 Vt. at 335–36 (no coverage for negligence where insured intentionally shot home intruder).

Another general rule is that in cases where the plaintiff alleges more than one cause of an injury, the court must focus on "the causes of the injury and their relationship to one another rather than the theory of recovery forwarded by a plaintiff." *Mailhiot v. Nationwide Mut. Fire Ins. Co.*, 169 Vt. 498, 503 (1999). In insurance-coverage disputes, therefore, "the concern is ordinarily not with the question of 'culpability' or why the injury occurred, but only with the nature of the injury and how it physically happened, which must then be compared with the language of the insurance policy to determine whether this type of injury from this type of physical cause was intended to be covered by the policy." *American Commerce Ins. Co. v. Porto*, 811 A.2d 1185, 1195–96 (R.I. 2002) (quoting 7 Couch on Insurance 3d § 101:41 at 101-131-32); accord *Mailhiot*, 169 Vt. at 502–03.

In this case, the bodily harm was inflicted by the kidnapping, sexual assault, and murder. Any alleged antecedent negligence on the part of another insured is inseparable from that intentional act; there would have been no negligence in the absence of that event. See *Mailhiot*, 169 Vt. at 502 (negligence does not exist in the abstract). For this reason, the court does not agree with defendants' assertion that the theory of negligence

4

advanced in the underlying complaint is a separate concurrent cause of the harm in this case. It is rather a theory of culpability that attempts to explain why the harm occurred. *Mailhiot*, 169 Vt. at 502; *Northern Security Ins. Co. v. Perron*, 172 Vt. 204, 221 n.15 (2001).

It follows from these general principles that the relevant act for purposes of determining whether the bodily harm arose out of the "sexual molestation of a person" was the intentional sexual assault rather than any antecedent negligence on the part of Denise Woodward. See *Porto*, 811 A.2d at 1195–96 (no coverage for boy scout troop leader who negligently failed to prevent another troop leader from sexually abusing children). The focal point of the inquiry in these cases is whether the bodily harm arose from sexual molestation, and not whether the bodily harm could have been prevented by another insured. See *Metropolitan Property and Cas. Ins. Co. v. Miller*, 589 N.W.2d 297, 300 (Minn. 1999) (no coverage for wife who allegedly negligently failed to prevent husband from sexually assaulting minor child); *Allstate Ins. Co. v. Bates*, 185 F.Supp.2d 607, 612–13 (E.D.N.C. 2000) (same).

Similarly, the relevant act for purposes of determining whether there was an "occurrence" in this case was the intentional crime rather than any antecedent negligence. An "occurrence" takes place at the time the party is actually damaged, rather than at some other moment when an allegedly wrongful act sets in motion the chain of events that eventually leads to the injury. See *Farmers Alliance Mut. Ins. Co. v. Salazar*, 77 F.3d 1291, 1295–97 (10th Cir. 1996) (no coverage for claim of negligent supervision against parents because the intentional murder committed by their son was not an "occurrence" within the meaning of the policy). Because the kidnapping, sexual assault and murder were not accidents, there is no coverage for the allegation that the perpetrator's spouse negligently failed to prevent the harm. Both of the foregoing conclusions are independent grounds supporting the determination of "no coverage."

For purposes of the "intentional acts" exclusion, the court must look to the language of the insurance policy to determine whether the relevant act was the intentional crime or the antecedent negligence. The rule here is that the intentional-acts exclusion applies separately to each insured (without respect to the actions of another insured) if the policy language excludes coverage for acts expected or intended by "the insured," *Northern Security Ins. Co. v. Perron*, 172 Vt. 204, 220–22 (2001), but that the exclusion applies collectively if the policy language excludes coverage for acts expected or intended by "an insured." *Allstate Ins. Co. v. Vose*, 2004 VT 121, ¶¶ 21–23, 177 Vt. 412. In other words, if the policy excludes coverage for acts intended by "the insured," then the relevant act for purposes of applying the exclusion is the act of the separate insured named in the complaint (e.g., in *Perron*, the alleged negligent act). But if the policy excludes coverage for the intentional acts of "an insured" or "any insured," then the policy "excludes all insureds from coverage for damages caused by the intentional or criminal acts of an insured," whether named in the complaint or not. *Villa v. Short*, 947 A.2d 1217, 1223–24 (N.J. 2008); accord *Vose*, 2004 VT 121, ¶ 22.

5

Two Vermont cases illustrate this point. In *Perron*, two parents were alleged to have negligently failed to prevent their minor child from sexually abusing other minor children who visited the home, and one of the issues in the case was whether the policy provided coverage for the parents' alleged antecedent negligence. 172 Vt. at 206–07, 218–22. The relevant insurance policy excluded bodily injury that was expected or intended by "the insured," and so the *Perron* court held that the exclusion applied "only to claims brought against the particular insured named in the claim," and thus, "any exclusion of [the intentional actor] from coverage would not affect coverage for the claims against the other insureds." *Id*. at 220–22.

Conversely, in *Vose*, the question was whether insurance coverage existed for a husband who allegedly negligently failed to prevent his wife from abusing their foster child; the insurance policy in that case excluded coverage for the intentional or criminal acts of "any insured." 2004 VT 121, ¶ 21, 177 Vt. 412. As in this case, the tort-plaintiffs there argued that the negligence claim against husband should be analyzed separately from the intentional acts of his wife because the negligence complaint alleged that the injuries arose "from the unintended or unexpected consequences of [his] conduct." *Id*., ¶ 21. The Supreme Court disagreed:

> These arguments are without merit. There is no coverage for the negligence claim raised against Jeffrey Vose because Allstate's policy excludes coverage for bodily injuries that are intended by "any insured." "When the exclusionary language refers to intentional acts of '*an* insured,' courts have uniformly concluded that the exclusion applies to all claims which arise from the intentional acts of any one insured, even though the claims are stated against another insured." [Quoting *Perron*, 172 Vt. at 220.] There is no meaningful difference between the terms "an insured" or "any insured." In this case, Allstate "intended that the wrongful act of *any* insured would void the policy," and it unambiguously drafted and included language to this effect in its contract with the insureds. . . .
>
> The negligence claim against Jeffrey Vose arises from, and is dependent on, the intentional acts of Janet Vose. Without her intentional acts of abuse against S.C., there could be no claim against Jeffrey Vose. Thus, the relevant act for determining coverage is Janet Vose's intentional abuse of S.C., not Jeffrey Vose's alleged negligent failure to protect S.C. from this abuse. [Citing *Perron*, 172 Vt. at 221.] Because there is no coverage for Janet Vose's intentional acts, there is no coverage for the derivative negligence claim raised against Jeffrey Vose. See *id*. Summary judgment was therefore properly granted for Allstate.

2004 VT 121, ¶¶ 22–23, 177 Vt. 412.[2]  This language controls the outcome of the present case: the intentional-acts exclusion here provides that there is no coverage for bodily injury that is "expected by, directed by, or intended by *an* 'insured.'"  For the reasons expressed in *Vose*, therefore, the relevant act for determining coverage in this case is the intentional kidnapping, sexual assault, and murder perpetrated by Michael Jacques.  And because there is no coverage for his acts, "there is no coverage for the derivative negligence claim against" Denise Woodward.  *Vose*, 2004 VT 21, ¶ 23; accord *EMCASCO Ins. Co. v. Diedrich*, 394 F.3d 1091, 1095–96 (8th Cir. 2005) (no coverage for claim that parents negligently failed to prevent son from sexually molesting other children).

The supposed wrinkle here is the "separate insureds" or severability clause.  Defendants argue that the severability clause—which explains that "[e]ach of the above is a separate 'insured'"—creates an expectation that the intentional-acts exclusion will apply separately to each insured, and that this expectation creates an ambiguity (which must be resolved in favor of coverage) when compared to the actual language of the intentional acts exclusion.  In support of this argument, defendants cite to a number of cases, most prominently the recent decision of the California Supreme Court in *Minkler v. Safeco Ins. Co. of America*, 232 P.3d 612 (Cal. 2010).

*Minkler* involved an allegation that a homeowner had negligently failed to prevent her son from sexually assaulting a minor child, and the terms of her insurance policy excluded coverage for injuries that were expected or intended by "an insured."  232 P.3d at 614.  And although the California Supreme Court acknowledged that application of the normal rule here would result in a finding of no coverage—as in *Vose*—the Court found it significant that the policy contained a severability clause explaining that "this insurance applies separately to each insured."  *Id*. at 614–15.  In the view of the California Supreme Court, this clause conflicted with the indefinite intentional-acts exclusion and thus created an ambiguity that needed to be resolved in favor of coverage.  See *id*. (explaining that "a lay insured would reasonably anticipate that, under a policy containing such a clause, each insured's coverage would be analyzed separately, so that the intentional act of one insured would not, in and of itself, bar liability coverage of another insured for the latter's independent act that did not come within the terms of the exclusion").  In the final analysis, therefore, the severability clause created an expectation on the part of the insured that the policy would cover her so long as her own conduct did not fall within the intentional-acts exclusion.  *Id*. at 624; see also *id*. at 622 (collecting cases in support of this conclusion).

Defendants seek application of *Minkler* here.  This court does not find *Minkler* persuasive for three reasons.

---

[2] It is curious that neither party cited *Vose* for its substantive outcome in their briefing.  It is furthermore curious that defendants cited *Vose* for a procedural point, thus indicating awareness of its existence, but did not bring the case's substantive holding to the attention of the tribunal.

First, the California Supreme Court was careful to note that the homeowners' insurance policy in *Minkler* did not contain a specific provision excluding claims for bodily injury that arose out of the sexual molestation of a person, and that it was therefore not deciding the question of how a policy containing that provision should be interpreted. *Id*. at 620. This is important because "[p]roper insurance contract interpretation requires that the policy provisions be read together and viewed as an integrated whole." *Waters v. Concord Group Ins. Cos.*, 169 Vt. 534, 536 (1999) (mem.). In this case, therefore, the separate-insureds clause may mean that the policy applies separately to each insured, but it does not change the fact that "the policy that separately applies to [each insured] contains an exclusion for bodily injury 'arising out of sexual molestation.'" *Ristine v. Hartford Ins. Co.*, 97 P.3d 1206, 1209–10 (Or. Ct. App. 2004) (no coverage for spouse who negligently failed to prevent her husband from committing sexual abuse). A severability clause can make it clear that the insurance policy applies separately to each insured, but it cannot create coverage where none exists. *BP America, Inc. v. State Auto Prop. & Cas. Ins. Co.*, 148 P.3d 832, 840–41 (Okla. 2005).

Second, as *Minkler* itself recognizes, it is the minority rule. See 232 P.3d at 625 ("A greater number of cases, we recognize, have taken the opposite view, concluding that a severability clause does not alter the collective application of an exclusion for intentional, criminal, or fraudulent acts by 'an' or 'any' insured."). And, in this court's view, the majority cases are frankly more persuasive. As the majority cases explain, separate-insured clauses mean that each insured will be treated separately for purposes of the intentional-acts exclusion, but "[t]he fact remains . . . that as applied even independently to each insured, an 'any insured' exclusion unambiguously eliminates coverage for each and every insured." *J.G. v. Wangard*, 2008 WI 99, ¶ 42 n.10, 753 N.W.2d 475 (no coverage for spouse who negligently failed to prevent husband from committing sexual abuse); see also *Minkler*, 232 P.3d at 625 (collecting majority cases). In other words, as applied here: Denise Woodward is a separate insured, but her insurance policy excludes coverage for bodily injury that is expected or intended by "an insured." This is not ambiguous—she and her husband are the two insureds on the policy, and the intentional act of "an insured" is an intentional act committed by either one of them. Again, the severability clause makes it clear that the policy applies separately to each insured, but it cannot create coverage where none exists. See *Secura Supreme Ins. Co. v. M.S.M.*, 755 N.W.2d 320, 329 (Minn. Ct. App. 2008) (explaining that "[t]he act of applying the policy separately to each insured does not alter or create ambiguity in the substance or sweep of the exclusion").

Finally, there is the issue that the insurance policy in *Perron* had a severability clause. See 172 Vt. at 219 (noting provision that insurance policy "applies separately to each insured"). Although it is true that the *Perron* opinion did not focus on the impact of the severability clause, the *Perron* court did go out of its way to explain that if the intentional-acts exclusion in that case had referred to the intentional acts of "an insured," the policy would have applied "to all claims which arise from the intentional acts of any one insured, even though the claims are stated against another insured." *Id*. at 220. There is no mention in *Perron* (or *Vose*) that the severability clause would have changed the analysis at all.

8

For these reasons, the court is not persuaded that the severability clause here creates any ambiguity. The insurance policy applies separately to each insured, but each separate insurance policy contains a definition of the term "occurrence," an explanation that "bodily injury" does not include bodily harm arising out of the "sexual molestation of a person," and an exclusion for bodily injury that is expected or intended by "an insured." It is not reasonable for a policyholder to expect coverage given these provisions and definitions. Plaintiff is entitled to a declaration that the denial of coverage is proper, and that it has no duty to indemnify Denise Woodward in the underlying civil action.

Of course, the duty of an insurer to defend its insured is substantially broader than the duty to indemnify, and generally, the insurer must defend the action if there is a possibility of coverage. *City of Burlington v. Nat'l Union Fire Ins. Co*., 163 Vt. 124, 127 (1994). For the reasons expressed above, however, this court has determined that there is no possibility of coverage in this case. It follows that the insurer is under no obligation to defend. *Id*.; *Garneau v. Curtis & Bedell, Inc.*, 158 Vt. 363, 368 (1992).

### ORDER

(1) Plaintiff Co-operative Insurance Companies' Motion for Summary Judgment (MPR #1), filed Sep. 21, 2010, is ***granted***;

(2) Defendant James Bennett's Motion for Summary Judgment (MPR #3), filed Nov. 18, 2010, is ***denied***;

(3) A final judgment order shall issue separately.

Dated at Chelsea, Vermont this _____ day of April, 2011.

_____
Harold E. Eaton, Jr.
Superior Court Judge

9