2011 VT 109

## PROSELECT INSURANCE COMPANY v. Robyn LEVY

[30 A.3d 692]

No. 10-438

¶ 1. September 13, 2011. Plaintiff ProSelect Insurance Company filed this declaratory relief action to determine its duty to indemnify its insured in a lawsuit alleging medical malpractice and sexual

---

assault. The trial court construed a policy exclusion to bar coverage and entered judgment in favor of ProSelect. Robyn Levy, plaintiff in the underlying suit, appeals from the judgment, asserting that: (1) the malpractice claims are covered under the concurrent causation doctrine; and (2) the policy exclusion as interpreted by the trial court contravenes public policy. We affirm.

¶ 2. The material undisputed facts may be summarized as follows. Levy's complaint alleged that she began psychiatric counseling with the insured, Dr. Peter J. McKenna, in July 2003 and that treatment continued until early 2005.[1] During that time, she alleged that Dr. McKenna negligently failed to properly diagnose her psychological disorder, prescribed harmful medications, encouraged her to pursue "unhealthy lifestyle choices," failed to refer her to a community-based mental health program, and engaged in treatment "at variance with accepted professional protocols." In a separate count, Levy alleged that, "[i]n the course of . . . treatment," Dr. McKenna had committed sexual assault and battery.

¶ 3. The sexual assault allegations came to light when Levy informed her treating physician, who contacted law enforcement officials.[2] In a subsequent interview with investigators, Levy recounted her

history of psychiatric illness, including anorexia nervosa and bipolar disorder that began in adolescence, and multiple resulting hospitalizations. In July 2003, Levy began treatment with Dr. McKenna at his office, which was located at his home in Essex Junction. She recalled that, during their first session, she informed Dr. McKenna that she had engaged in a sexual relationship with a former psychiatrist. During sessions Dr. McKenna focused on that relationship, and would often stroke her hair and embrace her. In December 2003, some six months after the start of their counseling, Dr. McKenna showed up at Levy's apartment, and they engaged in sexual intercourse. Thereafter, Levy recalled, the sexual relationship continued and intensified; Dr. McKenna would regularly visit her apartment several times a week, they went on camping trips together, and she occasionally stayed at Dr. McKenna's house when his wife was away. The relationship ended in February 2005.

¶ 4. In her statement to the investigators and in response to discovery, Levy claimed that Dr. McKenna had attempted to isolate her by refusing to refer her to other health care providers, recalling that he stated, "You don't need them, you have me," and by prescribing pain medications to keep her dependent. Levy's expert, Dr. Goldstein, observed that Dr. McKenna's pain prescriptions "created a psychological climate that played into her pathology" and noted that "at Dr. McKenna's instigation [Levy] even cut off her contracts with the nutritionist," which exacerbated her eating disorder and led to further health problems. Dr. Goldstein found in Dr. McKenna's course of treatment an "overall pattern to distance [Levy] and isolate her from everybody in her outside life who was interested in her welfare and potentially could help her."

---

[1] The named defendants in the complaint were the Estate of Peter J. McKenna, who died since the events in question, and Linda McKenna, Dr. McKenna's wife and administrative assistant. The trial court dismissed the claims against Linda McKenna, and this Court affirmed. *Levy v. Estate of McKenna*, No. 2009-431 (Vt. May 21, 2010) (unpub. mem.), available at http://www.vermontjudiciary.org/d-upeo/upeo.aspx.

[2] The revelations led to a professional misconduct complaint and Dr. McKenna's suspension from practice, as well as criminal charges and a no contest plea to

---

two counts of engaging in sexual relations with a vulnerable adult.

As he explained, "it appeared that . . . in terms of providing treatment, [Dr. McKenna was] monopolizing her all for himself." In addition to exacerbating her eating disorder and related physical problems, Dr. McKenna's behavior had the further result — according to Dr. Goldstein — of deepening Levy's "mistrust" of the medical profession, of making it more difficult for her to find another treating physician, and of impairing her ability to hold a job and otherwise function normally. At Dr. McKenna's sentencing on the criminal charges, Levy summarized the alleged misconduct in her victim-impact statement as follows: "He was my lover, my psychiatrist, my therapist, my every source of human contact . . . . I was alone in agony, totally isolated . . . . He realized how vulnerable . . . I was and he played that card . . . for all it was worth."

¶ 5. In September 2008, ProSelect filed this declaratory relief action, seeking a declaration that its professional liability policy excluded coverage of the underlying suit.[3] The parties filed cross-motions for summary judgment, and the trial court issued a written ruling in June 2010 in favor of ProSelect, declaring that it had no obligation under the policy to indemnify Dr. McKenna's estate for any of the claims asserted in the underlying suit. The trial court relied on a policy exclusion that provides:

> This policy does not apply to any liability of an insured or to any damages, incidents, claims or suits . . . [w]hich, in whole or in part, arise out of or contain any

allegations of any of the following by any person: . . . (a) Sexual intimacy, . . . exploitation, assault or undue familiarity; (b) Mishandling of transference or counter-transference. . . . (d) The abandonment of a patient with whom an insured has had an intimate or sexual relationship, or the failure to refer such patient to an appropriate healthcare provider.

¶ 6. The trial court reasoned that the underlying action was indisputably a "suit" that contains an allegation of sexual assault. Therefore, by its plain terms the policy barred coverage of the complaint in its entirety, "[e]ven assuming" that the medical malpractice count was — as Levy claimed — "totally unrelated" to the sexual assault and therefore otherwise covered. The trial court thus granted ProSelect's motion and entered judgment in its favor. This appeal followed.

¶ 7. Levy contends the trial court misapplied the policy exclusion and governing case law because her malpractice claims are "wholly independent" of the sexual assault allegation. She relies on the "concurrent causation" doctrine which we adopted in *State Farm Mutual Automobile Insurance Co. v. Roberts*, 166 Vt. 452, 459, 697 A.2d 667, 671 (1997). Under this doctrine, if an insured's liability arises from concurrent but separate acts, and one of them is covered by the policy, "coverage may not be denied merely because a separate excluded risk was an additional cause of the accident." *Id.* at 456, 697 A.2d at 669. We stressed, however, that the conduct "on which coverage is premised must somehow be independent of the conduct excluded from the policy." *Id.* at 463, 697 A.2d at 673-74.

¶ 8. The short answer to Levy's reliance on the concurrent causation doctrine is that it is misplaced. As noted, the trial court here concluded that, even if the malpractice claims were, as Levy claimed,

---

[3] The complaint also raised issues relating to ProSelect's obligation to pay defense costs incurred in the underlying disciplinary proceeding and civil suit, but neither party has appealed the trial court's rulings in this area.

"totally unrelated to the sexual assault," the unambiguous policy language plainly excludes coverage where, as here, the claimant's suit contains an allegation of sexual misconduct. The record also makes clear, however, that the malpractice and assault counts are inextricably intertwined, so that the concurrent causation would be unavailing in this case in any event. As summarized above, Levy's malpractice claims derive from the theory that Dr. McKenna was intent on isolating her from other health care providers in order to preserve their improper sexual relationship, and that the allegedly improper pain prescriptions, refusal to refer her to other health care providers, and other deviations from accepted medical norms were all designed to accomplish this end. Thus, the malpractice and assault claims can not be viewed as separate or independent causes, and coverage can not be grounded on the concurrent causation doctrine. See *Mailhiot v. Nationwide Mut. Fire Ins. Co.*, 169 Vt. 498, 504, 740 A.2d 360, 364 (1999) (holding that where allegedly covered "act of negligence . . . is inseparable from the excluded conduct . . . the concurrent causation doctrine does not apply").

¶ 9. This conclusion resolves Levy's additional assertion that the trial court's decision violates public policy by excluding covered as well as noncovered claims. To be sure, one state court has held that a policy provision limiting the amount of professional liability coverage of *"all* claims, whether related to sexual misconduct or not, once sexual misconduct is alleged," contravenes public policy. *Am. Home Assurance Co. v. Cohen*, 881 P.2d 1001, 1009 (Wash. 1994); see also *Am. Home Assurance Co. v. Stephens*, 130 F.3d 123, 127 (5th Cir. 1997) (invalidating coverage limitation based on "[t]he unique public policy concerns implicated when both sexual and non-sexual miscon-

duct claims independently exist").[4] As noted, however, we are not dealing here with independent and unrelated claims of nonsexual misconduct otherwise covered under the policy, but rather with a case where all of the claims essentially derive from the noncovered allegation of sexual misconduct. Accordingly, we find no public policy violation arising from the decision to exclude coverage in this case.

*Affirmed.*

Note: Justice Dooley was not present for oral argument, but reviewd the briefs, listened to oral argument and participated in the decision.

---

[4] The decision in *Stephens* was ultimately withdrawn after the Supreme Court of Texas, in responding to a certified question, ruled that the policy exclusion did not violate public policy. See *Am. Home Assurance Co. v. Stephens*, 164 F.3d 956 (5th Cir. 1999); *Am. Home Assurance Co. v. Stephens*, 982 S.W.2d 370 (Tex. 1998) (per curiam).