Gerald S. FRANKLIN, Plaintiff,

v.

PROFESSIONAL RISK MANAGEMENT
SERVICES, INC., Legion Insurance
Company, Inc., Defendants.

The Medical Professional Mutual
Insurance Company,
Intervenor.

No. Civ.A. 95–12431–RCL.

United States District Court,
D. Massachusetts.

Dec. 18, 1997.

Lee J. Dunn, Jr., Dunn & Auton, Dana Feltch, Office of Lee J. Dunn, Boston, MA, for Plaintiff.

Steven L. Schreckinger, Harvey Nosowitz, Jane M. Guevremont, Palmer & Dodge, Claudia A. Hunter, Hunter & Walsh, Boston, MA, for Defendants.

## MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (# 39)

COLLINGS, United States Magistrate Judge.

### I. Procedural Background

On August 18, 1995, plaintiff, Dr. Gerald S. Franklin (hereinafter "Dr. Franklin"), a psychiatrist, filed a Complaint for Declaratory Judgment in the Hampshire Superior Court seeking a declaration that the professional liability insurance policy issued to him by defendants, Professional Risk Management Services, Inc. (hereinafter "PRMS") and Legion Insurance Company, Inc. (hereinafter "Legion"), obligates the insurance company to indemnify him in an underlying tort action filed in state court by one of his patients.

(State Court Record, # 2) Subsequently, on October 26, 1995, Dr. Franklin filed a First Amended Complaint and added a second count alleging that PRMS and Legion had violated Massachusetts General Laws ch. 93A and 176D. (# 2) On November 7, 1995, PRMS and Legion removed the case to the United States District Court for the District of Massachusetts on grounds of diversity of citizenship. (# 1) Soon thereafter, the defendants filed their answers, and the parties engaged in automatic discovery. ( 3, 4; 7–9, 11) After various status reports and conferences, the parties consented to trial by a magistrate judge.[1] ( 25, 26) On September 12, 1997, the plaintiff filed a Motion for Summary Judgment or, in the Alternative, Motion to Stay Proceedings.[2] (# 39) Defendants duly filed a response. (# 46) Finally, after oral argument, the question as to whether or not to issue the requested declaratory judgment is ripe for decision. ( 48, 50)

### II. The Facts

The parties agree that the prayer for a declaratory judgment presents a question of law and that there are no genuine issues of material fact.[3] The undisputed facts are that in 1991, Dr. Franklin, a psychiatrist licensed to practice medicine in the Commonwealth of Massachusetts, purchased professional liability insurance through the American Psychiatric Association. The insurance policy, effective May 1, 1991 to April 30, 1993, was issued by Legion. Claims management was delegated to PMRS.

The underlying action in tort filed in state court arises in part, if not wholly, from a consensual sexual relationship that Dr. Franklin had with a patient while purporting to treat her from July 1991 to July 1993. On or about January 25, 1994, Dr. Franklin himself reported his misconduct to the Board of

---

1. This case has been referred to the undersigned for all purposes, including trial and entry of judgment, pursuant to 28 U.S.C. § 636(c).

2. During oral argument, plaintiff's counsel conceded that the Motion for Summary Judgment was, in fact, a Motion for Partial Summary Judgment as it only concerned Count I of the First Amended Complaint. In a separate Order entered this date, the Court has stayed action on Count II until after the underlying tort action in state court has been finally adjudicated.

3. The uncontested facts illustrated in this section are derived from plaintiff's Memorandum in Support of Motion for Summary Judgment (# 40), Exhibit E to same (American Psychiatric Association Professional Liability Insurance Program policy), and defendant's Opposition to Plaintiff's Motion for Summary Judgment and Plaintiff's Motion to Stay Proceedings (# 46).

Registration of Medicine and cooperated with the Board's investigation. His license to practice medicine was subsequently revoked.

On May 4, 1995, the patient filed a six count complaint against Dr. Franklin in Hampshire Superior Court for Negligence, Breach of Fiduciary Duty, Reckless Infliction of Emotional Distress, Breach of Contract, Money Had and Received, and an Action for Relief under Massachusetts General Laws ch. 93A, section 9. Prior to the filing of the complaint, Dr. Franklin gave notice and tendered a claim to Legion under his professional liability insurance contract. Legion has and continues to defend the action on behalf of Dr. Franklin. However, the insurer denies indemnity coverage.

In Count I of his First Amended Complaint in the instant case, Dr. Franklin "... prays that this Court will determine and declare..." that PRMS and Legion "...will provide full coverage and indemnification to [Dr. Franklin] to the extent required under Massachusetts law." Neither PRMS nor Legion seeks any counter declaration.

The policy at issue reads in pertinent part:

**A. ACTIVITIES COVERED**

\* \* \*

*ii. Basic Psychiatric Coverage.*

The insurance obtained by the APA Purchasing Group covers professional activities directly associated with the care and treatment of patients and other such activities considered to be within the scope of the practice of psychiatry ... Coverage is provided for payment of damages combined up to the specific limits indicated in the Participating Member's Evidence of Participation, for claims or injury arising out of the following matters:

1. Psychiatric services that were or should have been rendered with respect to evaluating, diagnosing or treating a mental disorder.

\* \* \*

**B. LIMITS OF LIABILITY AND PARTICIPATING INSURERS**

\* \* \*

**C. EXCLUDED ACTIVITIES**

The Program's policies do not provide either coverage, nor, with the exception of the undue familiarity exclusion (see number 11 below), a defense, for any of the following:

\* \* \*

11. Any claim or damages based in whole or in part on a claim of undue familiarity (see definition in section N). The APARRG, however, provides for the costs of a reasonable legal defense for undue familiarity claims subject to a maximum amount of $100,000 in the aggregate, for fees, expenses and disbursements.

\* \* \*

**N. DEFINITIONS**

The policies incorporate a number of key definitions. They include the following:

\* \* \*

*Undue familiarity* means any physical touching by a Participating Member of any person, or any other demonstrated intention or act for the purposes of sexual stimulation.

First Amended Complaint, # 2, Exh. A.

### III. Discussion

The case at bar involves what is known in the field of mental health as the "transference" phenomenon.

Transference is the term used by psychiatrists and psychologists to denote a patient's emotional reaction to a therapist and is generally applied to the projection of feelings, thoughts and wishes onto the analyst, who has come to represent some person from the patient's past.

*Simmons v. United States of America,* 805 F.2d 1363, 1364 (9th Cir.1986) (internal quotations omitted), *quoting* in part *Stedman's Medical Dictionary,* 1473 (5th Lawyer's Ed., 1985). "The patient, required to reveal her innermost feelings and thoughts to the therapist, develops an intense, intimate relationship with her therapist and often 'falls in love' with him." *St. Paul Fire & Marine Ins. Co. v. Love,* 459 N.W.2d 698, 700 (Minn. 1990). The phenomenon is not uncommon in

the mental health field and often may serve as a therapeutic tool. *See Id.;* Linda Jorgenson, et al., *Therapist–Patient Sexual Exploitation and Insurance Liability,* 27 Tort & Ins. L.J. 595, 596–7 (Spring, 1992). However, when mishandled, or misdiagnosed as the plaintiff would have it, transference can lead to physician/patient sex.

This case, in which Massachusetts law applies, raises two questions. The first is whether the mishandling of the transference phenomenon to the degree that consensual sex results may be construed as professional activity or malpractice and consequently fall within the four corners of a professional liability insurance policy. The second issue is whether the undue familiarity exclusion found in Legion's policy is applicable and enforceable in these circumstances.

It is manifest that the best way to interpret an insurance policy is to read the policy. *U.S. Liab. Ins. Co. v. Bourbeau,* 49 F.3d 786, 789 (1st Cir.1995). Unambiguous terms are construed and enforced according to their plain meaning. *Somerset Sav. Bank v. Chicago Title Ins. Co.,* 420 Mass. 422, 427, 649 N.E.2d 1123, 1127 (1995); *see also Alan Corp. v. International Surplus Lines Ins. Co.,* 823 F.Supp. 33, 38–39 (D.Mass. 1993). When the provisions of a policy are plainly and definitively expressed, the policy must be enforced in accordance with the terms. *Somerset Sav. Bank,* 420 Mass. at 426, 649 N.E.2d at 1127.

In *Roe v. Federal Insurance Co.,* 412 Mass. 43, 587 N.E.2d 214 (1992) the Supreme Judicial Court remarked that the term "professional" services, as it is used in the insuring provision of a medical malpractice policy, has been widely accepted to mean the following:

> [A medical malpractice] insurer's liability is ... limited to the performing or rendering of "professional" acts or services. Something more than an act flowing from mere employment or vocation is essential. The act or service must be such as exacts the use or application of special learning or attainments of some kind. The term "pro-

fessional" in the context used in the policy provision means · something more than mere proficiency in the performance of a task and implies intellectual skill as contrasted with that used in an occupation for production or sale of commodities. A professional act or service is one arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor or skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual ... In determining whether a particular act is of a professional nature or a "professional service" we must look not to the title or character of the party performing the act, but to the act itself.

*Roe,* 412 Mass. at 48–49, 587 N.E.2d at 217 (holding that dentist's improper sexual relationship with patient could not be construed as rendering professional services and therefore was not covered by professional liability insurance) *quoting Marx v. Hartford Accident & Indem. Co.,* 183 Neb. 12, 13, 157 N.W.2d 870, 871 (1968). In *Roe* the court commented on and distinguished the Georgia, Michigan, and Wisconsin cases relied on by the plaintiff dentist as they involved psychiatrists and the transference phenomenon. *See generally Roe,* 412 Mass. at 50–51, 587 N.E.2d at 218. The court did not indicate whether it would adopt the reasoning of those cases if the sexual contact had been between a patient and a psychiatrist rather than a dentist.

Later, in the case of *Medical Malpractice Joint Underwriting Assoc. of Mass. v. Goldberg,* 425 Mass. 46, 680 N.E.2d 1121 (1997), the Supreme Judicial Court again had occasion to deal with the issue. In *Goldberg* the court addressed the question of whether the Joint Underwriting Association (hereinafter "JUA") was entitled to reimbursement for the amount of settlement that it paid to the underlying claimant where the psychiatrist, Goldberg, did not authorize payment or agree to reimburse JUA if it prevailed on its coverage position.[4] Because the court con-

---

4. Like the instant case, the psychiatrist, Goldberg, and the underlying plaintiff pointed to the transference phenomenon while the insurer, JUA, "disclaimed coverage with respect to acts which Goldberg did not intend to constitute professional medical services or were objectively

cluded that the JUA was not entitled to reimbursement from Goldberg, it did not decide whether the underlying claims, similar to those in the instant case, were covered under the policy language. Specifically, the court did not address whether the mishandling of the transference phenomenon, and resultant sexual relations, would come within the scope of professional activities. However, in a closing footnote the court commented, "We are doubtful, *even were we to recognize an exception to liability for the sexual activities of a psychotherapist with a patient because of the "mishandling" of the transference phenomenon,* that any such exception would apply here." *Goldberg,* 425 Mass. at 61, n. 36, 680 N.E.2d at 1130–31, n. 36 (emphasis supplied).

In *Goldberg* the psychiatrist and patient had a ten-year sexual relationship that was the by-product of transference and countertransference. *Goldberg,* 425 Mass. at 48, n. 5, 680 N.E.2d at 1123, n. 5. Dr. Goldberg continued to treat the patient, failed to refer the patient to another psychiatrist, and "improperly terminated his relations with her." *Goldberg,* 425 Mass. at 48, 680 N.E.2d at 1123. The uncontested facts in the instant case are strikingly similar: Dr. Franklin began a sexual relationship with his patient, the relationship continued for an extended period, the patient subsequently filed a civil complaint, and both the patient and Dr. Franklin equate the sexual relations with malpractice, i.e., the "mishandling" of transference phenomenon.[5] Although the Supreme Judicial Court did not address the issue in *Goldberg,* the tone of the closing footnote is such that it appears as if the court was reluctant to conflate consensual sexual relations with professional activity. Given the factual similarities, even absent the exclusion, it is highly doubtful that, under Massachusetts law, the terms of Dr. Franklin's policy would obligate Legion to indemnify him for damages stemming from the sexual activities at issue.

However, I need not definitively decide the question of whether the mishandling of the

transference phenomenon bridges the gap between intentional nonprofessional and professional activity (within the confines of the mental health field). The reason is that, in my view, the policy's undue familiarity exclusion clearly relieves Legion of the burden of indemnity.

▆▆ Coverage exclusions are to be read literally, without poetic license, and any ambiguity is to be interpreted in favor of the insured. *Great Southwest Fire Ins. Co. v. Hercules Bldg. & Wrecking Co., Inc.,* 619 N.E.2d 353, 356, 35 Mass.App.Ct. 298, 303, *review denied* 622 N.E.2d 1364, 416 Mass. 1106 (1993); *High Voltage Engineering Corp. v. Federal Ins. Co.,* 981 F.2d 596, 600 (1st Cir.1992). If there are two rational interpretations of the policy language, the insured is entitled to the benefit of the one that is more favorable to it. *Hazen Paper Co. v. U.S. Fidelity and Guaranty Co.,* 407 Mass. 689, 700, 555 N.E.2d 576, 583 (1990). It is also appropriate to consider what an objectively reasonable insured, reading the relevant policy language, would expect to be covered. *Id.*

▆▆ I find no ambiguity in the coverage exclusions in the Legion policy. *American Home Assurance Co. v. Stone,* 864 F.Supp. 767, 773 (N.D.Ill. 1994). It does not appear that Dr. Franklin contends otherwise; rather, Dr. Franklin's contention is that the exclusion is unenforceable.

While the validity of undue familiarity exclusions has not been addressed in Massachusetts, other jurisdictions have examined and upheld substantially similar exclusions. In *Cranford Ins. Co. v. Allwest Ins. Co.,* 645 F.Supp. 1440 (N.D.Cal. 1986), the court found that a malpractice claim based upon the mishandling of the transference phenomenon was excluded from coverage under the insured's policy. The court concluded that the underlying claim fell within the basic coverage of the malpractice policy; however, the court determined that the claim was ex-

---

outside the scope of professional services", i.e., sexual relations.

**5.** The only distinguishing fact is that Dr. Goldberg continued to treat the patient while Dr.

Franklin discontinued billing the patient for sessions yet continued to prescribe drugs. *See generally* 39, 40, exhibit B thereto, and 46.

cluded from coverage because of policy language excluding "... damages awarded in suits ... involving undue familiarity, sexual intimacy, or assault concomitant therewith." *Cranford*, 645 F.Supp. at 1442. In applying the exclusion, the court observed that although the claim was based on malpractice, the sexual activity itself constituted the mishandling of the transference process.

Similarly, in *Govar v. Chicago Ins. Co.*, 879 F.2d 1581 (8th Cir.1989), the Appeals Court upheld the validity of a malpractice insurer's exclusion for "claims arising out of sexual acts performed or alleged to have been performed by the named insured." *Govar*, 879 F.2d at 1582. The underlying plaintiff brought a medical malpractice complaint alleging that her psychologist was negligent when he had sex with her while she was his patient. When she discovered the exclusion in the policy, she amended her original complaint, deleting all references to sex and alleged that the doctor failed to exercise the degree of skill and care required by his profession. The amended complaint notwithstanding, the court determined that the plaintiff's entire case was centered on sex. Finding that the sexual relationship was so intertwined with the doctor's malpractice as to be inseparable, the Appeals Court upheld the lower court's determination that the policy did not provide coverage.

Most recently, in *Chicago Ins. Co. v. Griffin*, 817 F.Supp. 861 (D.Hawai'i 1993), the district court held that a patient's malpractice claim based on an allegation that her psychologist mishandled the transference phenomenon by engaging in sexual relations with her was excluded from coverage due to a policy exclusion for claims "arising out of sexual activity." *Chicago*, 817 F.Supp. at 864. Like *Govar*, the court found that the undisputed facts demonstrated that the doctor's malpractice and the sexual relations were so intertwined as to be inseparable. *Chicago*, 817 F.Supp. at 865–6.

■ It is clear that the underlying matter precipitating the case at bar stems from sexual relations. In fact, plaintiff concedes this

in his characterization of the underlying suit. Plaintiff describes the underlying plaintiff's claims as,

... alleging ... that Dr. Franklin had been negligent in his treatment of her by his failure to properly deal with the transference phenomenon, his failure to provide adequate treatment for her underlying psychiatric difficulties, and his failure to terminate the doctor/patient relationship appropriately. In addition to these theories of malpractice, [the plaintiff] also alleged that Dr. Franklin had engaged in sexual misconduct with her.

Brief in Support of Motion, # 40 at 2–3.

In the instant case the Court confronts malpractice claims that, like *Cranford*, *Govar*, and *Chicago*, are so intertwined with sexual misconduct as to make them inseparable. It is noteworthy that the *Chicago* court, citing *Cranford* and *Govar*, specifically rejected the plaintiff's contention that the sexual acts were only one factor in the doctor's malpractice and that a jury could have found negligence without depending on sexual acts. In essence, the court concluded that the sexual acts formed an essential element of the underlying plaintiff's claim, satisfying the exclusion requirement "arising from."[6] With respect to Dr. Franklin, the allegations made against him are sufficiently intertwined to preclude coverage under the policy exclusion.

■ In support of this position, and in contrast to the exclusions discussed in *Cranford*, *Govar*, and *Chicago*, Legion's policy excludes from indemnity "any claim or damages based *in whole or in part* on a claim of undue familiarity." (# 40, Ex. E) (emphasis supplied) Thus Legion's undue familiarity exclusion acknowledges, and circumvents, the difficulties involved in determining whether the alleged malpractice is sufficiently intertwined with the allegations of sexual misconduct, i.e., whether the sexual misconduct constitutes an essential element of the underlying claim. Legion's prominent and plainly labelled exclusion should alert a pro-

---

6. The operative exclusion language in *Cranford* is "involving," *Govar* and *Chicago* use "arising from," while in the instant case Legion uses "based ... on." All three suggest a need for a nexus between the sexual misconduct and the claims alleged.

spective insured that any sexual misconduct precludes coverage.[7]

Plaintiff argues that enforcement of the exclusion in the case of sexual relations between patient and psychotherapist is barred by public policy. As the defendants note, an insurance policy is a contract between the insured and the insurer, not the underlying plaintiff and the insurer. "The issue is not what coverage is desirable, but rather what coverage the policy provides in fact and law." *Roe,* 412 Mass. at 54, n. 9, 587 N.E.2d at 220, n. 9.

I see no basis in Massachusetts law against enforcing the exclusion. It is to be recalled that it has long been against public policy to allow someone to insure against his or her intentional acts. By asking the court to strike down the exclusion as a matter of public policy, Franklin is requesting that the court require insurers to indemnify mental health practitioners for damages arising from intentional acts.[8] Given the damage that results from sex between a psychotherapist and patient, it is in the public interest to maintain the bright line rule that one cannot obtain insurance against liability for intentional acts such as those involved in the instant case. Otherwise, a considerable deterrent to such conduct would not be present. *American Home Assurance Co.,* 864 F.Supp. at 776–7. The deterrent, obviously, is that if liability is proven, the psychotherapist will be personally liable for any damages which are entered in a judgment.[9]

**IV. Conclusion and Order**

For the reasons stated, it is ORDERED that Plaintiff's Motion for Partial Summary Judgment (# 39) be, and the same hereby is, DENIED. The Court declines to issue the declaratory judgment prayed for by the plaintiff for the reason that such a declaration would not be in conformity with Massachusetts law. When final judgment is entered in this case, the Court shall enter judgment for the defendants on Count I.

---

**7.** Plaintiff relies on the "train of events" rule first articulated in *Lynn Gas & Elec. Co. v. Meriden Fire Ins. Co.,* 158 Mass. 570, 33 N.E. 690 (1893) and recently affirmed in *Jussim v. Massachusetts Bay Ins. Co.,* 415 Mass. 24, 610 N.E.2d 954 (1993) to circumvent the policy exclusion. Plaintiff's reliance on *Jussim* is misplaced. The "train of events" rule determines an efficient proximate cause of a loss. If the cause is an insured risk, there will be coverage even though the final form of the damage, produced by a series of related events, appears to take the loss outside the terms of the policy. *Jussim,* 415 Mass. at 27, 610 N.E.2d at 955–56. Plaintiff suggests that in the instant case "it is the psychiatrist's underlying departure from proper standards of therapeutic practice that set in motion a train of events that result in harm to the patient." (# 40) However, where Legion's undue familiarity exclusion precludes coverage there is no insured risk from

which to draw coverage for the final form of the damage.

**8.** Dr. Franklin makes no claim that he did not intentionally (as opposed to negligently) engage in sexual intercourse with the patient. It certainly can be argued that from the perspective of the psychotherapist/patient relationship, a psychotherapist is negligent in the sense that he or she commits malpractice when he or she engages in sexual intercourse with a patient. However, it is hard to imagine how one can engage in consensual sexual intercourse with another and not intend to do so.

**9.** Since Dr. Franklin's license to practice has been restored as of June 18, 1997, it is assumed that he will be earning income in the future.