ProSelect Ins. Co. v. Levy, No. S1292-08 CnC (Toor, J., June 14, 2010)

[The text of this Vermont trial court opinion is unofficial.  It has been reformatted from the original.  The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT
CHITTENDEN COUNTY

| | |
|---|---|
| PROSELECT INSURANCE COMPANY<br>  Plaintiff<br><br>  v.<br><br>ROBYN LEVY, THE ESTATE OF<br>PETER J. McKENNA and<br>LINDA McKENNA<br>  Defendants | SUPERIOR COURT<br>Docket No. S1292-08 CnC |

RULING ON CROSS MOTIONS FOR PARTIAL SUMMARY JUDGMENT

The complaint in this case seeks a declaration that a professional liability insurance policy issued by Plaintiff ProSelect Insurance Company (ProSelect) to Peter J. McKenna, M.D. does not provide coverage for any of the claims asserted in an underlying suit filed by Robyn Levy against the Estate of Peter J. McKenna (the "Estate") and Dr. McKenna's widow, Linda McKenna (Mrs. McKenna).  In the underlying lawsuit, Levy v. Estate of Peter J. McKenna, No. S0922-07 CnC, Levy alleges medical malpractice and sexual assault.  ProSelect's complaint also seeks a declaration that it is not obligated to continue to provide the Estate or Mrs. McKenna with a defense or to reimburse them for attorney's fees.  ProSelect asserts two counts in its complaint; count I seeks declaratory judgment against the Estate, and count II seeks declaratory judgment against Mrs. McKenna.

The Estate and Mrs. McKenna have filed an answer with defenses, and also a counterclaim.  The five counts of the counterclaim seek the following relief: (1) a declaration that the policy covers count I of Levy's complaint against the Estate; (2) a declaration that the policy covers counts V and VI of Levy's complaint against Linda L.

McKenna; (3) reimbursement of the Estate's costs of defending a Medical Practice Board proceeding; (4) reimbursement of the Estate's costs of defending the underlying lawsuit; and (5) identical reimbursement as in count 4, but based upon the Estate's claim that ProSelect improperly canceled Dr. McKenna's policy. The latter three claims all relate to a provision of the policy providing for reimbursement of up to $100,000 of the insured's defense expenses.

ProSelect moves for partial summary judgment on its claim against the Estate and on counts I, IV, and V of the counterclaim with regard to the Estate only.[1] The Estate opposes ProSelect's motion, and cross-moves for summary judgment on counts I, III, IV, and V of the counterclaim. Levy has filed a separate opposition to ProSelect's motion for partial summary judgment, along with her own statement of facts, and joins the Estate's argument for summary judgment in its favor.

I. Background

The following facts are undisputed except where noted. ProSelect issued to Dr. Peter J. McKenna a Medical Professional Liability "claims made" policy (the Policy), effective March 6, 2005. The Policy states that ProSelect, subject to the Policy's limits of liability and other terms and conditions, will pay on behalf of the insured: "[T]hose sums which YOU become legally obligated to pay as DAMAGES, up to the applicable Limits of Liability stated in the DECLARATIONS, because of a CLAIM for an INCIDENT in the performance of PROFESSIONAL SERVICES by YOU or someone for whom YOU are legally responsible." Policy § I. ProSelect has the "right and duty to defend" any suit

_____

[1] In its filings here, ProSelect represented that it was continuing to provide Mrs. McKenna with a defense on the pending appeal of a ruling by Judge Katz granting her summary judgment in the underlying case. As that appeal was recently concluded in her favor, it appears that all claims in this case relating to Mrs. McKenna are now moot. Levy v. Estate of Peter J. McKenna, No. 2009-431 (Vt. May 21, 2010) (unpublished mem.), available at http://www.vermontjudiciary.org/d-upeo/eo09-431.pdf.

2

against an insured seeking damages covered by the Policy. The Policy covers only claims first made against the insured and reported to ProSelect during the policy period or during any "extended reporting period." The "policy period" is defined as March 6, 2005 to March 6, 2006 or until the Policy is canceled, whichever is earlier.

The Policy contains several exclusions from coverage. Exclusion 13 states as follows:

> This POLICY does not apply to any liability of an INSURED or to any DAMAGES, INCIDENTS, CLAIMS or SUITS . . . [w]hich, in whole or in part, arise out of or contain any allegations of any of the following by any person:
>
> (a) Sexual intimacy, abuse, molestation, harassment, exploitation, assault or undue familiarity;
> (b) Mishandling of transference or countertransference;
> (c) The failure to terminate the healthcare provider-patient relationship with any person with whom an INSURED has had an intimate or sexual relationship;
> (d) The abandonment of a patient with whom an INSURED has had an intimate or sexual relationship, or the failure to refer such patient to an appropriate healthcare provider; or
> (e) The negligent or improper employment, retention, investigation, supervision, training or reporting or failure to make report, of any person whose conduct would be excluded by paragraphs (a)–(d) above.

Policy § VIII(13). The Policy defines a "suit" as "a civil action filed in a court of law in which DAMAGES to which this POLICY applies are alleged."

The Policy also contains a section entitled "Defense and Claims Expenses." That section states, in pertinent part, that ProSelect will reimburse insureds for

> reasonable expenses (but not DAMAGES, fines or penalties) up to a total of $100,000 required for YOUR defense in a civil SUIT or governmental regulatory proceeding first brought against YOU during the POLICY PERIOD alleging the actual sexual abuse, sexual misconduct or any other sexual activity by YOU or by anyone for whom YOU are legally responsible while engaged in the performance of PROFESIONAL SERVICES . . . .

3

Policy § VI(5). Section VI(5) also states that "[a]s a condition to such reimbursement, YOU must notify US in writing of any such SUIT or [governmental regulatory] proceeding within the POLICY PERIOD . . . ." Id. Exclusion 13, described above, does not apply to § VI(5) of the Policy. See Policy § VIII(13) ("This exclusion [Exclusion 13] shall not apply to reimbursement for those defense expenses, fees and costs described in paragraph (5) of the definition of CLAIM EXPENSES set forth in Section VI. of this POLICY.").

On June 1, 2005, the Vermont Board of Medical Practice (the Board) notified Dr. McKenna that it had received information that he had engaged in "an improper, unprofessional and sexual relationship" with Levy. Investigators from the Vermont Board of Medical Practice and the Vermont Medicaid Fraud Unit had interviewed Dr. McKenna on May 31, 2005, and Dr. McKenna had admitted to the investigators that he had engaged in a sexual relationship with his former patient, Robyn Levy, that lasted approximately one year. The Board opened a complaint and began an inquiry into the allegations. Also on June 1, the State of Vermont moved for and obtained a summary suspension of Dr. McKenna's medical license.

Dr. McKenna's insurance agent notified ProSelect that Dr. McKenna was the subject of a proceeding commenced by the Vermont Board of Medical Practice that involved alleged sexual conduct with a patient and that Dr. McKenna's license had been suspended. By a letter dated June 7, 2005, ProSelect notified Dr. McKenna that it would be canceling his policy effective July 22, 2005 due to the suspension of his license. ProSelect asserts that, if the Policy had not been canceled in July 2005, ProSelect would not have renewed the Policy when it came up for renewal in March 2006, because

4

ProSelect only writes coverage for licensed physicians and Dr. McKenna's license had been suspended, and because he had pled no contest in a criminal proceeding alleging that he had sex with a patient. The Estate objects to that assertion, maintaining that it is an expression of opinion rather than a statement of fact, and that it is unsupported by any factual material relating to ProSelect's underwriting policies. The Estate, however, points to nothing demonstrating that ProSelect would have had any legal obligation to renew the Policy in March 2006.

Dr. McKenna purchased a "Reporting Endorsement," which states that it extends indefinitely the time period for Dr. McKenna (and now his Estate) to report claims or suits otherwise covered by the Policy that are first made after July 22, 2005 and that are for incidents that occurred after March 6, 2003 and before July 22, 2005. The Reporting Endorsement provides that "[t]he period for reporting CLAIMS or SUITS is not extended for . . . [r]eimbursement for reasonable expenses . . . as set forth in [§ VI(5) of the Policy]."

At the conclusion of the May 31, 2005 interview, Dr. McKenna was arrested. He was arraigned on June 1, 2005. The information filed by the State alleged that between September 2003 and February 2005, Dr. McKenna engaged in sexual activity with a vulnerable adult, Patient A, while he was being paid by Medicaid to treat that adult. The information asserted three charges against Dr. McKenna, each for violation of 33 V.S.A. §§ 6902(1)(D) and 6913(d). The "Patient A" referred to in the information is Ms. Levy. On or about July 26, 2005, Dr. McKenna pled nolo contendere to the first two charges of the information and the State dismissed the third charge. Dr. McKenna received a

sentence that included probation, and was also required to pay Medicare and Medicaid $6,000 in restitution toward fees paid by those agencies for Levy's sessions.

Dr. McKenna died on March 21, 2006. On or about August 31, 2006, Levy filed with the Vermont Probate Court, Chittenden District, a "Written Statement of Claim" in which she alleged that she "has an unliquidated claim against the estate of Dr. Peter McKenna related to Dr. McKenna's malpractice during the provision of psychiatric services to the claimant, from on or about August 2003 to on or about March 2005." The Estate promptly forwarded a copy of Levy's statement of claim to ProSelect.

In August 2007, Levy filed her complaint in Levy v. Estate of Peter J. McKenna, No. S0922-07 CnC. She amended her complaint to add claims against Linda McKenna, Dr. McKenna's widow. The amended complaint asserts the following seven counts: (1) medical malpractice against Dr. McKenna; (2) punitive damages for medical malpractice; (3) sexual assault; (4) punitive damages for sexual assault and battery; (5) breach of contract against Linda McKenna; (6) medical malpractice against Linda McKenna; and (7) premises liability. Count I ("Medical Malpractice of Dr. McKenna") of Levy's amended complaint alleged that Dr. McKenna's treatment was negligent in various ways, including by failing to properly diagnose her psychological disorder, prescribing medications that were harmful to her, encouraging her to pursue unhealthy "lifestyle choices," and failing to refer her to a community-based mental health program. ProSelect has been defending the Estate in that suit under a reservation of rights, asserting that it was not waiving "any rights it may have" to disclaim coverage or withdraw from the defense.

## I.  Discussion

The two main issues presented in the parties' overlapping cross motions are (1) whether Exclusion 13 bars coverage on the claims brought against the Estate in the underlying lawsuit; and (2) notwithstanding Exclusion 13, whether under § VI(5) of the Policy, the Estate is entitled to receive reimbursement from ProSelect for the Estate's efforts to defend itself against the proceeding before the Vermont Medical Practice Board or against Levy's amended complaint in the underlying action.  The court takes those issues in turn.

### A.  Exclusion 13

ProSelect argues that there is no coverage for the underlying suit because Exclusion 13 of the Policy bars coverage for all suits "[w]hich, in whole or in part, arise out of or contain any allegations of . . . [s]exual intimacy, abuse, molestation, harassment, exploitation, assault or undue familiarity," and because it is undisputed that the underlying suit contains such allegations and at least in part arises out of those allegations.  The Estate maintains that (1) Exclusion 13 is ambiguous and must be construed in favor of coverage; (2) interpreting Exclusion 13 as ProSelect does would be contrary to public policy; and (3) the doctrine of concurrent causation requires ProSelect to provide coverage.  In her opposition, Levy reiterates the Estate's latter two arguments, and further argues that there is a genuine issue of material fact regarding whether Dr. McKenna's alleged failures to properly treat Levy are independent of his sexual abuse.  That issue is important, argues Levy, because it rebuts Exclusion 13's assumption that it is almost always impossible to separate alleged professional malpractice cleanly from sexual misconduct.

7

When interpreting an insurance contract, the court relies principally on the "plain, ordinary, and popular meaning of the disputed terms." Vt. Mut. Ins. Co. v. Parsons Hill P'ship, 2010 VT 44, ¶ 21. "When a provision is ambiguous or may reasonably be interpreted in more than one way, then [courts] will construe it according to the reasonable expectations of the insured, based on the policy language." Id.; see also State Farm Mut. Auto. Ins. Co. v. Roberts, 166 Vt. 452, 461 (1997) ("[T]erms that are ambiguous or unclear [must] be construed broadly in favor of coverage."). However, courts "will not deprive the insurer of unambiguous terms placed in the contract for its benefit." Parsons Hill P'ship, 2010 VT 44 at ¶ 21 (quoting Fireman's Fund Ins. Co. v. CNA Ins. Co., 2004 VT 93, ¶ 9, 177 Vt. 215). ProSelect has the burden of proving that Exclusion 13 applies. See State v. CNA Ins. Co., 172 Vt. 318, 324 (2001) ("[T]he burden is on the insurer to show that a third party's claim against the insured is entirely excluded from coverage.").

## 1. Ambiguity

The court finds nothing ambiguous in the terms of Exclusion 13. The exclusion plainly states that the Policy "does not apply to any liability of an INSURED or to any DAMAGES, INCIDENTS, CLAIMS or SUITS . . . [w]hich, in whole or in part, arise out of or contain any allegations of . . . [s]exual intimacy, abuse, molestation, harassment, exploitation, assault or undue familiarity." The underlying action, Levy v. Estate of Peter J. McKenna, No. S0922-07 CnC, is indisputably a "suit" under the Policy definition and in the vernacular. The seven-count complaint in that suit explicitly includes an allegation of sexual assault (count III). Even assuming that the "medical malpractice" count in the underlying suit is totally unrelated to the sexual assault, Levy's suit "contain[s]"

8

allegations of sexual assault, and therefore under the plain terms of Exclusion 13, the Policy does not apply to the underlying suit (or any part of it, even if it is otherwise covered under the Policy).

Other courts have interpreted similar provisions to mean that any sexual misconduct bars the entire suit. In Franklin v. Professional Risk Management Services, Inc., the court concluded that an exclusion for "any claim or damages based in whole or in part on a claim of undue familiarity" "acknowledges, and circumvents, the difficulties involved in determining whether the alleged malpractice is sufficiently intertwined with the allegations of sexual misconduct" and that the exclusion "should alert a prospective insured that any sexual misconduct precludes coverage." 987 F. Supp. 71, 76–77 (D. Mass. 1997). Levy argues that Franklin is distinguishable because the exclusion in that case had to do with mishandling of the transference phenomenon, and because the Franklin court relied on two cases that did not involve claims of malpractice independent of the claims of sexual misconduct. In fact, the Franklin court did not need to decide the question revolving around mishandling of the transference phenomenon, because it concluded that the undue familiarity exclusion in that case clearly applied. Id. at 75. Neither did the court rely on Govar v. Chicago Insurance Co., 879 F.2d 1581 (8th Cir. 1989) or Chicago Ins. Co. v. Griffin, 817 F. Supp. 861 (D. Haw. 1993)—to the contrary, the Franklin court distinguished those cases on the grounds that the exclusionary language was different. Id. at 76.

The Estate's arguments that Exclusion 13 is ambiguous are unconvincing. The Estate argues that count I of Levy's amended complaint is in itself a "suit" as defined by the Policy, and that since it does not mention anything about a sexual assault, Exclusion

9

13 cannot apply to that "suit." The court disagrees. A single "civil action" can contain numerous "claims." See V.R.C.P. 2; Barkeij v. Don Lee, Inc., 34 F. Supp. 874, 876 (S.D. Cal. 1940). If "suit" is defined as a "civil action"—as it is in the Policy at § IX(13)—then defining an individual count among several as a "suit" is too narrow a definition. If the exclusion only referred to "claims," and if the Policy nowhere defined a "claim," then the court might be inclined to find ambiguity. See Legion Ins. Co. v. Vemuri, No. 96 C 2229, 1997 WL 757529, at *5–*6 (N.D. Ill. 1997) (interpreting an exclusion for "[a]ny damages based in whole or in part on a claim of undue familiarity," where the policy did not define "claim," and concluding that the term "claim" could mean either "suit" or "count"). That is not the case here, since the Policy explicitly defines a "claim" as a "suit," Policy at § IX(2), and since Exclusion 13 speaks not only of claims but also, in the disjunctive, of "suits."

The Estate also argues that applying Exclusion 13 to bar coverage for an otherwise covered claim of medical malpractice would be inconsistent with the reasonable expectations of insured physicians, who would expect their policies to cover a medical professional liability claim even if other claims were not covered. Very recently the Supreme Court reaffirmed that the "'reasonable expectations of the parties are important in considering the scope of coverage,' because of the adhesive nature of [insurance] contracts." Vt. Mut. Ins. Co. v. Parsons Hill P'ship, 2010 VT 44, ¶ 28 (quoting State Farm Mut. Auto Ins. Co. v. Roberts, 166 Vt. 452, 461 (1997)). But the Supreme Court has also said that, "apart from circumstances where an agent of the insurance carrier promises specific coverage, we have not held that the expectations of an insured can control over unambiguous policy language." Id.; see also Me. Mut. Fire Ins.

10

Co. v. Tinker, 2005 VT 35, ¶ 9, 178 Vt. 524 (mem.) ("[T]he insured's coverage expectations must be reasonable, otherwise a willfully ignorant policy holder might claim coverage for all manner of explicitly excluded damages."). Here, in the face of the explicit and unambiguous language of Exclusion 13, any expectation that the Policy would provide coverage on a claim containing allegations of sexual misconduct would not be reasonable, and cannot control.

Finally, the Estate argues that Exclusion 13 is ambiguous because the use of the words "in whole or in part" makes the exclusion confusing. The Estate maintains that an insured physician could reasonably interpret that phrase as meaning that suits in which only inappropriate sexual contact is alleged are excluded "in whole," whereas suits which allege both medical malpractice and inappropriate sexual contact are excluded "in part" (i.e., the part that alleges the inappropriate sexual contact). The court disagrees. The words "in whole or in part" modify the words in the series ending in "claims or suits"; the Estate's interpretation seeks to add ambiguity where there is none. Other courts have similarly found no ambiguity in exclusions using the same phrase in similar medical professional liability policies. E.g., Franklin v. Prof'l Risk Mgmt. Services, Inc., 987 F. Supp. 71, 75 (D. Mass. 1997); S.J.A.J. v. First Things First, 2000 WI App 116, ¶ 10, 235 Wis.2d 275, 616 N.W.2d 524, 2000 WL 463309 (per curiam) (unpublished opinion).[2]

## 2. Public Policy

The Estate argues that excluding coverage for Levy's medical malpractice claim just because Levy also alleges inappropriate sexual contact would discourage patients from making complaints against medical professionals for such conduct, and therefore

---

[2] The Estate's argument that ProSelect could have written Exclusion 19 differently does not prove that Exclusion 19 is ambiguous. It is entirely possible to say something unambiguously in more than one way.

run contrary to public policy favoring safeguarding the public from misconduct by those professionals. In support, the Estate cites American Home Assurance Co. v. Cohen, 881 P.2d 1001 (Wash. 1994). ProSelect responds that, since Cohen was decided, numerous other courts have addressed the public policy issue in the context of similar policy provisions and each of them has refused to void those provisions on public policy grounds. ProSelect maintains that exclusions like Exclusion 13 will not deter reporting of sexual misconduct, and, for various reasons, it actually advances public interests.

"Vermont law has long held that courts have the power to void written contract provisions that violate public policy in either their terms or contemplated performance." LoPresti v. Rutland Reg'l Health Services, Inc., 2004 VT 105, ¶ 19, 177 Vt. 316. "Such contract terms can be voided as against public policy only when 'it could be said that they were injurious to the interests of the public or contravened some established interest of society.'" Id. (quoting State v. Barnett, 110 Vt. 221, 232 (1939)). Undoubtedly the interests of the public include safeguarding the public from misconduct—and sexual abuse, in particular—perpetrated by medical professionals upon their patients. That policy is reflected in a variety of statutory provisions. See 26 V.S.A. § 1354 ("unprofessional conduct"); 33 V.S.A. § 6902(1)(D) (defining as "abuse" "[a]ny sexual activity with a vulnerable adult by a caregiver who volunteers for or is paid by a caregiving facility or program"); 33 V.S.A. § 6913(d) (penalties for abuse). The issue, then, is whether Exclusion 13 is injurious to that interest.

In Cohen, the Washington Supreme Court held that it was against the public policy of that state "for an insurer to provide lesser coverage for a psychologist's nonsexual misconduct, where sexual misconduct is also alleged as having occurred in the

12

same or related course of professional treatment, than the coverage that is provided where only nonsexual misconduct is claimed." Am. Home Assurance Co. v. Cohen, 881 P.2d 1001, 1009 (Wash. 1994). The court noted that the effect of the exclusion in that case was "to limit all recovery of clients who are injured by the sexual misconduct of their psychologists. . . . even if a client does not include a claim of sexual misconduct as part of a malpractice action against the psychologist." Id. The court reasoned:

> There is a clear disincentive for reporting the unethical and harmful conduct of an insured psychologist, even though such reporting would benefit the public by helping to prevent future acts of sexual misconduct in other therapeutic relationships. . . .
>
> The Legislature has clearly expressed its intent to halt and to punish unethical and unprofessional sexual misconduct by psychologists through administrative disciplinary proceedings, injunctive actions, and criminal prosecutions.
>
> The insurance provision at issue here, by penalizing those clients who report the sexual misconduct of their psychologists, impedes an important legislative goal and thus violates the public policy of this state.

Id. at 1009–10.

At least one other court, after reviewing authorities holding to the contrary, has adopted the Cohen court's reasoning. Am. Home Assurance Co. v. McDonald, 698 N.Y.S.2d 436, 444 (N.Y. Sup. Ct. 1999) ("[E]xpansion of the coverage limits placed on claims involving sexual misconduct on the part of an insured social worker to include claims of malpractice which do not involve the social worker's sexual misconduct violates the public policy of the State of New York."). On appeal, however, the Appellate Division modified that portion of the Supreme Court's opinion. Am. Home Assurance Co. v. McDonald, 712 N.Y.S.2d 507, 510–11 (N.Y. App. Div. 2000) ("[W]e

13

declare that the sexual misconduct provision does not violate New York's public policy").

Although it is possible that such exclusions could deter reporting of sexual misconduct, Defendants have presented no evidence that this is the case.[3] Furthermore, such exclusions would have other effects that would advance Vermont's public policies. As the McDonald court reasoned:

> In fact, a more likely inference is that the limitation of coverage would dissuade a psychologist, who might be so inclined, from committing acts of sexual misconduct with his or her patients because he or she knows that his or her insurance policy will not fully cover damages in the event of a lawsuit.

Id. (citation omitted); see also Franklin v. Prof'l Risk Mgmt. Services, Inc., 987 F. Supp. 71, 77 (D. Mass. 1997) (psychotherapist's personal liability is a considerable deterrent); Am. Home Assurance Co. v. Levy, 686 N.Y.S.2d 639, 646–47 (N.Y. Sup. Ct. 1999) ("[T]he Sexual Misconduct Provision will discourage sexual misconduct by therapists who would be exposed to, and uninsured for, personal liability."); Am. Home Assurance Co. v. Stephens, 982 S.W.2d 370 (Tex. 1998) (per curiam) (adopting Judge Reavley's dissenting opinion in American Home Assurance Co. v. Stephens, 130 F.3d 123, 128–30 (5th Cir. 1997), reasoning that a similar exclusion would discourage disclosure of sexual misconduct, but that it "surely serves to discourage the conduct itself"); S.J.A.J. v. First Things First, 2000 WI App 116, ¶ 15, 235 Wis.2d 275, 616 N.W.2d 524, 2000 WL

---

[3] Indeed, there is no evidence before the court that patients even consider the insurance issue before reporting. See McDonald, 712 N.Y.S.2d at 511 (record did not support conclusion that patients are even aware of the amount of their therapists' available coverage); Am. Home Assurance Co. v. Levy, 686 N.Y.S.2d 639, 646 (N.Y. Sup. Ct. 1999) (mistake to presume that patients are aware of their therapists' insurance policy prior to litigation). As between patients and the insured professionals, it seems much more likely that the latter might consider the terms of their policies before entering into sexual relationships with their patients, rather than the other way around.

463309 (per curiam) (unpublished opinion) ("[I]t is consistent with public policy to hold therapists personally responsible for criminal sexual conduct with their patients.").[4]

Both the Estate and Levy argue that this particular case involves claims of professional malpractice that are independent of and entirely separable from the sexual misconduct. It is true that some of the cases discussed above involved professional malpractice claims that were inseparably intertwined with sexual misconduct. E.g., Franklin v. Prof'l Risk Mgmt. Services, Inc., 987 F. Supp. 71, 76 (D. Mass. 1997). But even assuming this case were different in that respect, it would still not mandate a different result here. The plain language of Exclusion 13 obviates the need to inquire into whether the alleged malpractice is intertwined with the sexual misconduct. See id.; RLI Ins. Co. v. Williams, No. 3:95-CV-1300-H, 1996 WL 189579, at *4 (N.D. Tex. Apr. 1, 1996). Furthermore, because of the nature of the psychiatrist-patient relationship, it is reasonable for insurers to offer policies that avoid such inquiries. See Am. Home Assurance Co. v. Levy, 686 N.Y.S.2d 639, 647 (N.Y. Sup. Ct. 1999).

Therefore, for the reasons discussed by the Appellate Division in McDonald and by courts in other jurisdictions, this court concludes that Exclusion 13 does not violate the public policy of Vermont.

### 3. Concurrent Causation

Citing Cranford Insurance Co. v. Allwest Insurance Co., 645 F. Supp. 1440 (N.D. Cal. 1986), the Estate argues that Levy's alleged acts of negligence are independent from

---

[4] ProSelect has advanced various other ways in which Exclusion 13 advances or is consistent with public policy. ProSelect argues that Exclusion 13 will increase the affordability of professional liability insurance, public policy favors freedom of contract, BISHCA approved Exclusion 13, and that Vermont does not require physicians to carry liability insurance at all. The court concludes that its reasoning above is sufficient to resolve the public policy issue, and thus does not reach those additional arguments.

the conduct excluded from the Policy, and that therefore the doctrine of concurrent causation requires ProSelect to provide coverage. ProSelect maintains that the doctrine does not apply in this case because (1) the exclusion is not framed in terms of causation of the injury; and (2) even assuming the Dr. McKenna's sexual misconduct and his alleged non-sexual malpractice are independent causes of Levy's alleged injuries, the underlying suit does not involve a situation where those causal factors concurred to cause a single injury.

Vermont adopted the "concurrent causation" doctrine in State Farm Mutual Automobile Insurance Co. v. Roberts, 166 Vt. 452 (1997). Mailhoit v. Nationwide Mut. Fire Ins. Co., 169 Vt. 498, 500 (1999). Under that doctrine, "if an occurrence is caused by a risk included within the policy, coverage may not be denied merely because a separate excluded risk was an additional cause of the accident." Id. at 501 (quoting Roberts, 166 Vt. at 456); see also 7 Couch on Insurance § 101:49 (3d ed.). This court agrees with the courts in other jurisdictions holding that the doctrine of concurrent causation plays no role where, as here, an exclusion unambiguously applies even when there is an independent and concurrent cause.[5] See Am. Home Assurance Co. v. Stone, 61 F.3d 1321, 1330 n.7 (7th Cir. 1995); S.J.A.J. v. First Things First, 2000 WI App 116, ¶ 10, 235 Wis.2d 275, 616 N.W.2d 524, 2000 WL 463309 (per curiam) (unpublished opinion). The concurrent causation doctrine is a judicially-created rule, and parties to an insurance contract generally have a right to "contract out" of common-law rules. See 7 Couch on Insurance § 101:39 (3d ed.). Cranford is distinguishable because the exclusion

---

[5] For this reason, Levy's argument that there is a genuine issue of material fact regarding whether Dr. McKenna's alleged failures to properly treat Levy are independent of his sexual abuse is unavailing. The dispute is not material because, under the court's conclusion, it does not matter that Dr. McKenna's alleged failures to properly treat Levy are independent of his sexual abuse.

16

in that case—for "damages awarded in suits . . . involving undue familiarity, sexual intimacy, or assault concomitant therewith," 645 F. Supp. at 1442—did not unambiguously apply even when there is an independent and concurrent cause. See Franklin v. Prof'l Risk Mgmt. Services, Inc., 987 F. Supp. 71, 76 & n.6 (D. Mass. 1997) (distinguishing Cranford on the basis of the exclusionary language).

The above discussion addresses three of the four defenses Defendants articulate in their answer to ProSelect's complaint for declaratory judgment. Those defenses, briefly stated, are: (1) concurrent causation; (2) public policy; and (3) ambiguity. The fourth defense relates only to Mrs. McKenna, and the motions before the court do not seek judgment with respect to her. Therefore, because the court has already addressed the arguments raised in Defendants' defenses, and because Exclusion 13 unambiguously excludes coverage for the entire underlying suit, ProSelect is entitled to summary judgment on count I of its complaint for declaratory judgment, and on count I of Defendants' counterclaim.

## B. Reimbursement for Claim Expenses

ProSelect argues that it has no duty to reimburse the Estate for fees and costs incurred by the Estate in defending the underlying suit because under the express terms of the Policy, such reimbursement is available only for suits brought against the insured and reported to ProSelect during the policy period, and Levy did not bring her suit until August 2007, long after the Policy lapsed. ProSelect also maintains that the Reporting Endorsement Dr. McKenna purchased did not extend the deadlines set forth in § VI(5) of the Policy for reimbursement coverage. The Estate argues that it is irrelevant that Levy filed suit after the Policy was canceled because a governmental regulatory proceeding

was commenced during the policy period, and § VI(5) is available if either a governmental proceeding or a suit alleging inappropriate sexual conduct is brought during the policy period. The Estate also argues that ProSelect received written notice during the policy period of the governmental regulatory proceeding and of Dr. McKenna's alleged sexual abuse of Levy and her claim that she was harmed thereby.

Alternatively, the Estate argues that even if Levy had to sue the Estate within the policy period for the reimbursement benefit to be available, the Estate would still be entitled to reimbursement because ProSelect's cancellation of the Policy was unlawful. ProSelect's response is that (1) the fact that it received notice of the governmental regulatory proceeding during the policy period is irrelevant to whether ProSelect is obligated to reimburse the Estate for fees and costs incurred by it in defending the underlying suit; and (2) any disputes concerning the propriety of ProSelect's cancellation of the Policy are irrelevant because the Policy would not have been renewed in March 2006.

The court applies the same principles of contract interpretation articulated in Part II.A above. As mentioned in Part I above, the Policy contains a section entitled "Defense and Claims Expenses." That section states, in pertinent part, that ProSelect will reimburse the insured—Exclusion 13 notwithstanding—for

> reasonable expenses (but not DAMAGES, fines or penalties) up to a total of $100,000 required for YOUR defense in a civil SUIT or governmental regulatory proceeding first brought against YOU during the POLICY PERIOD alleging the actual sexual abuse, sexual misconduct or any other sexual activity by YOU or by anyone for whom YOU are legally responsible while engaged in the performance of PROFESIONAL SERVICES . . . .

18

Policy § VI(5). Section VI(5) also states that "[a]s a condition to such reimbursement, YOU must notify US in writing of any such SUIT or [governmental regulatory] proceeding within the POLICY PERIOD . . . ." Id.

ProSelect does not dispute that the Vermont Board of Medical Practice opened a proceeding against Dr. McKenna in June 2005, that the proceeding involved allegations of sexual misconduct, or that ProSelect was notified of the proceeding before the Policy was canceled in June 2005. ProSelect agrees that the Estate is entitled to reimbursement of reasonable and adequately documented fees and costs incurred by Dr. McKenna in defending the Board proceeding. To that extent, the parties appear to have stipulated that the Estate is entitled to summary judgment on count III of Defendants' counterclaim—which generally asserts that ProSelect should pay the Estate up to $100,000 for defending the Board proceeding.

The Estate claims it is also entitled to recover up to $100,000 for the Estate's defense in the underlying civil action (counterclaim counts IV and V).[6] ProSelect maintains that it is not obligated to reimburse the Estate for any defense costs incurred by it because, unlike the Board proceeding, the underlying suit was not brought and reported while the Policy was in effect. ProSelect's argument is, basically, that the Estate has run up against one of the essential limitations of a "claims made" policy: such policies only cover acts or omissions discovered and brought to the insurer's attention during the policy period, and therefore provide no prospective coverage at all. See 1 Couch on

---

[6] The parties nowhere elaborate on whether they believe the $100,000 limit is for the combined Board and court proceedings, or whether there is a separate $100,000 limit for each proceeding. Thus, the court does not address that potential, unbriefed issue.

19

Insurance § 1:5 (3d ed.) (distinguishing between "claims made" and "occurrence" policies).

As mentioned above, one of the Estate's arguments in support of its counterclaims for damages under § VI(5) of the Policy is that ProSelect received written notice during the policy period of Dr. McKenna's alleged sexual abuse of his patient Robyn Levy and of her claim that she was harmed thereby. ProSelect maintains that this is irrelevant because the trigger for reimbursement coverage is the bringing and reporting of a suit, and Levy did not bring a suit while the Policy was in effect. Based upon the arguments made by the parties, the court agrees with ProSelect on this point.

However, § 2 of the Policy—upon which neither party appears to have focused in the present context—suggests that, unlike a pure "claims made" policy, the Policy in this case may provide prospective coverage. That section provides as follows:

> If during the POLICY PERIOD YOU become aware of any INCIDENT or circumstances which may reasonably be expected to give rise to a CLAIM and give written notice to US of such INCIDENT or circumstances, then any such CLAIMS which subsequently are made against YOU and are reported to US as soon as practicable based upon, arising out of, or resulting from such INCIDENTS or circumstances shall be considered first made and reported to US on the last day of the POLICY PERIOD.

Policy § 2. The court concludes that the parties should have an opportunity to brief the impact of this provision upon the Estate's counterclaims, and therefore reserves judgment on count IV of Defendants' counterclaim.

As to count V of Defendants' counterclaim, Defendants' argument is that ProSelect improperly canceled Dr. McKenna's policy, and that the Estate is therefore entitled to reimbursement even if Levy's claim was not brought and reported to ProSelect until after the close of the policy period. Here, even if ProSelect had not canceled the

20

Policy, it is undisputed that the policy period would have expired prior to the underlying suit even if not wrongfully terminated. There is no evidence that ProSelect had any legal obligation to renew the Policy. See 2 Couch on Insurance § 29:5 (3d ed.) ("Where there is no clause in the policy expressly granting a privilege or imposing a duty of renewal, neither party has any right to require a renewal."). ProSelect is therefore entitled to summary judgment on count V of Defendants' counterclaim.

Order

ProSelect's motion for partial summary judgment is granted in part: the court finds that the policy does not provide coverage for the substantive claims asserted in the underlying suit. There is therefore no duty to defend. In addition, ProSelect's motion for summary judgment on counts I and V of Defendants' counterclaims is granted. The court reserves ruling on count IV of Defendants' counterclaim.

The Estate's cross motion for summary judgment on count III of Defendants' counterclaim is granted. The Estate's motion for summary judgment on counts I and V of Defendants' counterclaim is denied. The court reserves ruling on the Estate's motion for summary judgment on count IV of Defendants' counterclaim.

All parties are ordered to submit within 30 days any additional briefing on the impact of § 2 of the Policy upon the Estate's counterclaims for damages under § VI(5) of the Policy.

Dated at Burlington this _____ day of June 2010.


_____
Helen M. Toor
Superior Court Judge